DECISION AND JUDGMENT ENTRY
{¶ 1} Jerome McGhee appeals his convictions and sentences for trafficking in crack cocaine, possession of crack cocaine, trafficking in cocaine, possession of cocaine, possession of criminal tools, and having a weapon while under a disability. His appointed counsel advised this Court that he has reviewed the record and can discern no meritorious claims for appeal. Accordingly, under Anders v. California (1967),386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, counsel has moved to withdraw.
 {¶ 2} After independently reviewing the record, we disagree with counsel's assessment because the record contains a meritorious claim. Specifically, we find that the trial court erred in sentencing Appellant to the maximum sentences available without making the requisite findings or stating its reasons for those findings. Because the error is clear from the record, we grant appellate counsel's motion to withdraw and reverse and remand this matter to the trial court for re-sentencing.
 {¶ 3} In October 2003, the Lawrence County Drug Task Force executed a search warrant on the apartment Appellant shared with his girlfriend. The Task Force discovered cocaine, crack cocaine, marijuana, a gun, bullets, a scale, and a C-clamp or vice, while executing the warrant. The grand jury indicted Appellant on seven charges; however, the grand jury later issued a second indictment based on the same factual basis, modifying the charges brought against Appellant. The State dismissed the original indictment.
 {¶ 4} A jury found Appellant guilty of all charges in the second indictment and the trial court sentenced Appellant to a total of sixteen years imprisonment, suspended his driver's license for five years, and fined him $75,000. The trial court appointed new counsel for Appellant after sentencing. Newly appointed counsel filed a motion to withdraw as counsel, notifying this Court that he could discern no meritorious issues for appeal, and filed an Anders brief.
 {¶ 5} In Anders, the United States Supreme Court held that if counsel determines after a conscientious examination of the record that the case is wholly frivolous, counsel should so advise the court and request permission to withdraw. Id. at 744. Counsel must accompany the request with a brief identifying anything in the record that could arguably support the appeal. Id. Counsel also must furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that the client chooses. Id. Once these requirements have been satisfied, the appellate court must then fully examine the proceedings below to determine if meritorious issues exist. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id. Alternatively, if the appellate court concludes that any of the legal points are arguable on their merits, it must afford the appellant the assistance of counsel to argue the appeal. Id.
 {¶ 6} Here, Appellant's counsel satisfied the requirements set forth in Anders. Additionally, Appellant has filed a pro se brief setting forth additional proposed assignments of error. Accordingly, we will examine appointed counsel's proposed assignments of error, the proposed assignments of error raised by Appellant, and the entire record to determine if this appeal lacks merit. Appointed counsel raises the following proposed assignments of error: "I. Counts One and Two, and Counts Three and Four of the Indictment are allied offenses of similar import, and therefore Mr. McGhee's convictions were in violation of his rights against double jeopardy, and he should not have been convicted and/or sentenced on all of the charges. II. Mr. McGhee's trial counsel had a conflict of interest that resulted in ineffective assistance of counsel. III. The trial court erred by not suppressing Mr. McGhee's statement to law enforcement officers, as it was not knowingly and voluntarily given. IV. Failure to request findings of fact as to trial court's denial of Appellant's motion to dismiss was ineffective assistance of trial counsel, and therefore Appellant should be entitled to a new trial. V. The trial court erred by not granting Mr. McGhee's Motion to Dismiss on speedy trial grounds. VI. The trial judge failed to make the proper findings upon which to impose maximum sentences and consecutive sentences, and therefore the sentence should be vacated and the matter remanded to the trial court for re-sentencing. VII. The cumulative effect of errors in the trial court deprived Mr. McGhee of a fair trial."
 {¶ 7} Appellant assigns the following proposed errors in his pro se brief: "I. Reversal of the conviction is warranted when the accused is deprived of a fair trial as guaranteed by the United States and Ohio Constitutions and the resulting convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. II. Appellant was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions when counsel failed to file a motion to discharge jury after amendment to cure a variance in the evidence. III. The trial court erred by ordering a consecutive sentence when it failed to make all the necessary findings required by law under R.C. 2929.14(E)(4), and in doing so, McGhee was sentenced to 16 years, when he should've been sentenced to 8 years. IV. Reversal of a conviction is warranted when the accused is deprived of a fair trial as guaranteed by the United States and Ohio Constitutions when the evidence in the case shows "actual innocence" and when the resulting conviction is not supported."
 I. {¶ 8} In his first proposed assignment of error, counsel suggests that if counts one (trafficking in crack cocaine) and two (possession of crack cocaine) of the indictment are allied offenses of similar import, the trial court may have violated Appellant's rights against double jeopardy by convicting and sentencing him on both counts. Similarly, he contends that counts three (trafficking in cocaine) and four (possession of cocaine) may also be allied offenses of similar import.
 {¶ 9} The double jeopardy protections afforded by the federal and state Constitutions guard citizens against successive prosecutions and cumulative punishments for the "same offense." State v. Moss (1982),69 Ohio St.2d 515, 518, 433 N.E.2d 181, 184. In Blockburger v.United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, the United States Supreme Court held that the test for determining whether two offenses are the "same" for double jeopardy purposes, i.e., one offense as opposed to two separate offenses, is whether each offense requires proof of an element that the other does not. Thus, where two offenses arise from one course of conduct, the Double Jeopardy clauses protection from cumulative punishments do not apply.
 {¶ 10} In State v. Rance, 85 Ohio St.3d 632, 635, 1999-Ohio-291,710 N.E.2d 699, the Ohio Supreme Court recognized that a legislature "may prescribe the imposition of cumulative punishments for crimes that constitute the same offense under Blockburger without violating the federal protection against double jeopardy or corresponding provisions of a state's constitution." Therefore, when a legislature intends to either prohibit or permit cumulative punishments for conduct that may qualify as two crimes, application of Blockburger is improper and the legislature's expressed intent is dispositive. Id., citing Ohio v. Johnson (1984),467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425, 433. Moreover, citing Missouri v. Hunter (1983), 459 U.S. 359, 366, 103 S.Ct. 673, 678,74 L.Ed.2d 535, 542, the Court held that "[T]he Double Jeopardy clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."[1] Finally, the Court determined that Ohio's multiple-count statute, R.C. 2941.25, "is a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses." Id., citing State v.Bickerstaff (1984), 10 Ohio St.3d 62, 65, 461 N.E.2d 892, 895.
 {¶ 11} R.C. 2941.25 permits a defendant to be punished for multiple offenses of dissimilar import. R.C. 2941.25(B); State v. Blankenship
(1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816, 817. "If, however, a defendant's actions `can be construed to constitute two or more allied offenses of similar import,' the defendant may be convicted (i.e., found guilty and punished) of only one." Rance at 636, citing R.C. 2941.25(A). But where a defendant commits offenses of similar import either separately or with a separate animus, he may be punished for both under R.C. 2941.25(B). State v. Jones (1997), 78 Ohio St.3d 12, 13-14,676 N.E.2d 80, 81.
 {¶ 12} Therefore, under Rance, the first step is to determine whether the offenses are "allied offenses of similar import" within the meaning of R.C. 2941.25. Two offenses are "allied" if the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other.'" Id. at 636. If not, the court's inquiry ends because the crimes are offenses of dissimilar import and the defendant may be convicted for both. R.C. 2941.25(B); id. However, if the elements do correspond, the court must proceed to a second step and review the defendant's conduct to determine if the crimes were committed separately or with a separate animus for each crime. If so, the trial court may convict the defendant of both offenses. R.C. 2941.25(B).
 {¶ 13} When undertaking the first step of the analysis, Rance
expressly held that the court must compare the elements of the offenses in the abstract. Id., paragraph one of the syllabus. In other words, the court must simply examine the statutory elements of the involved crimes without considering the particular facts of the case. Id. at 636-638.
 {¶ 14} Counsel suggests that trafficking in crack cocaine in violation of R.C. 2925.03(A)(2) and possession of crack cocaine in violation of R.C. 2925.11(A) may be allied offenses. R.C. 2925.03 provides: "A. No person shall knowingly do any of the following: * * * (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 15} In comparing the elements of these crimes in the abstract, we conclude that the elements of R.C. 2925.07(A)(2) do not correspond to the elements of R.C. 2925.11(A) to such a degree that the commission of one requires the commission of another. See State v. Alvarez, Butler App. No. CA2003-03-067, 2004-Ohio-2483 (possession of and trafficking in a controlled substance are not allied offenses of similar import); Statev. Rotarius, Cuyahoga App. No. 78766, 2002-Ohio-666 (possession of drugs and their preparation for sale are not allied offenses of similar import). A person may obtain, possess or use a controlled substance in violation of R.C. 2925.11 without preparing it for shipment or distributing it in violation of R.C. 2925.07. Likewise, a person may distribute or prepare a controlled substance for distribution without actually possessing it, e.g. when one directs the transportation or preparation of the controlled substance for sale or serves as a middleman in a drug transaction. Therefore, we conclude that counts one (trafficking in crack cocaine) and two (possession of crack cocaine) are not allied offenses of similar import. For the same reasons, counts three (trafficking in cocaine) and four (possession of cocaine) are not allied offenses of similar import either. The first proposed assignment of error lacks merit.
 II. {¶ 16} In his second and fourth proposed assignments of error, counsel argues that trial counsel may have been ineffective. Appellant makes the same argument in his second proposed assignment of error.
 {¶ 17} The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693, 104 S.Ct. 2052. In order to prove the ineffective assistance of counsel, a criminal defendant must show that (1) counsel's performance was in fact deficient, i.e., not reasonably competent, and (2) such deficiencies prejudiced the defense so as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687,80 L.Ed.2d at 693: State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, 538 N.E.2d 373.
 {¶ 18} When considering whether trial counsel's representation amounts to a deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983), 461 U.S. 499, 508-509,103 S.Ct. 1974, 76 L.Ed.2d 96.
 A. {¶ 19} In his second proposed assignment of error, counsel argues that trial counsel may have been ineffective because he had an actual conflict of interest which adversely affected his performance. Trial counsel previously represented Cameron Simmons, who lived in the apartment with Appellant's girlfriend between May and August 2003 while Appellant was in jail. Appellant argued that the drugs and other items found in the apartment did not belong to him and may have been left by Simmons or other individuals who lived in the apartment during the summer of 2003.
 {¶ 20} Trial counsel filed a "Motion to Resign" based on his prior representation of Simmons and Appellant's displeasure with that representation. The trial court concluded that there was no conflict because trial counsel no longer represented Simmons and counsel was free to assign ownership of the drugs and other illegal items to Simmons at trial. Therefore, the court denied the motion to withdraw.
 {¶ 21} When a right to counsel exists, the Sixth Amendment to the United States Constitution guarantees that representation will be free from conflicts of interest. State v. Gillard (1992), 64 Ohio St.3d 304,312, 595 N.E.2d 878, 883. Both defense counsel and the trial court have an affirmative duty to ensure that a defendant's representation is without conflict. State v. Dillon, 74 Ohio St.3d 166, 167-168,1995-Ohio-169, 657 N.E.2d 273. The court's duty arises when the defendant objects to the multiple representation or when the court knows or reasonably should know that a conflict of interest exists. State v.Manross (1988), 40 Ohio St.3d 180, 181, 532 N.E.2d 735, 737. Then, the court is required to conduct an inquiry into the possible conflict of interest. Id.
 {¶ 22} Joint representation of conflicting interests is "suspect because of what it tends to prevent an attorney from doing." Holloway v.Arkansas (1978), 435 U.S. 475, 489-490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426,438. "A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." Manross, 40 Ohio St.3d at 182, 532 N.E.2d at 738. A possibility of a conflict exists if the "interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties." Cuyler v. Sullivan (1980), 446 U.S. 335, 356, 100 S.Ct. 1708, 1722,64 L.Ed.2d 333, 351-352 (Marshall, J., concurring in part and dissenting in part).
 {¶ 23} In order for a defendant to demonstrate an actual conflict of interest, he must first show that "some plausible alternative defense strategy or tactic might have been pursued. He need not show that the alternative defense would necessarily have been successful * * * but that it possessed sufficient substance to be a viable alternative." State v.Gillard, 78 Ohio St.3d 548, 552, 1997-Ohio-183, 679 N.E.2d 276. The defendant must also show that this alternative defense could not be pursued because of an inherent conflict with counsel's other representation. State v. Peoples, Franklin App. No. 02AP-945, 2003-Ohio-4680.
 {¶ 24} Appellant contends that trial counsel may have had a conflict of interest because he previously represented Cameron Simmons and, therefore, could not vigorously argue that Simmons owned the drugs discovered during the search rather than Appellant. We disagree. Trial counsel stated at the motion hearing that he no longer represented Simmons. Therefore, he was able to argue at trial that Simmons was the actual owner of the drugs found in the apartment. In fact, trial counsel actually pursued this strategy at trial. He argued that several individuals, including Simmons, resided in the apartment while Appellant was in jail and that one of those individuals left the drugs when he vacated. We find no conflict of interest in trial counsel's representation of Appellant. Counsel's second proposed assignment of error has no merit.
 B. {¶ 25} In his fourth proposed assignment of error, counsel argues that trial counsel may have been ineffective by failing to request findings of fact when the trial court denied Appellant's Motion to Dismiss on speedy trial grounds. Counsel contends that, because of trial counsel's ineffectiveness, key information may be missing from the record that could now aid this appeal. We disagree.
 {¶ 26} Crim.R. 12(F) mandates that a trial court state its essential findings on the record when factual issues are involved in determining a motion. However, in order to invoke this provision, trial counsel must request that the trial court state its findings of fact on the record.State v. Benner (1988), 40 Ohio St.3d 301, 317, 533 N.E.2d 701.
 {¶ 27} Although the better practice would have been for trial counsel to request findings of fact on the record, here the record is sufficient to allow a full review of Appellant's claims regarding the alleged violation of his right to a speedy trial. Therefore, Appellant suffered no prejudice as a result of counsel's failure to request findings of fact. See State v. Sapp, Clark App. No. 99CA84, 2002-Ohio-6863, at ¶ 59. Moreover, a request for findings of fact would not have changed the outcome of the motion. See State v. Clark, Pike App. No. 02CA684, 2003-Ohio-1707, at ¶ 21. Counsel's fourth proposed assignment of error has no merit.
 C. {¶ 28} In his second proposed assignment of error, Appellant argues that his counsel was ineffective because he failed to move to discharge the jury under Crim.R. 7(D) after the State amended the indictment to cure a variance in the evidence. Here, the State never sought to amend the indictment. Rather, the grand jury issued a new indictment and the State dismissed the original indictment. Therefore, Crim.R. 7(D) provisions concerning amendments have no application in this case and trial counsel could not have successfully moved to discharge the jury based on the issuance of a second indictment. Appellant's second proposed assignment of error is without merit.
 III. {¶ 29} In his third proposed assignment of error, counsel states that the trial court may have erred by not suppressing Appellant's statement to law enforcement officers on the basis it was not knowingly and voluntarily given.
 {¶ 30} Appellate review of a trial court's decision regarding a motion to suppress involves mixed questions of law and fact. State v.Featherstone, 150 Ohio App.3d 24, 2002-Ohio-6028, 778 N.E.2d 1124, at paragraph 10, citing State v. Vest, Ross App. No. 00CA2576, 2001-Ohio-2394;State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. When ruling on a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Dunlap, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 582. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Dunlap; Long; State v. Medcalf (1996),111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Featherstone; Medcalf; State v. Fields (Nov. 29, 1999), Hocking App. No. 99CA11.
 {¶ 31} The Fifth Amendment to the United States Constitution provides, in pertinent part, that no person shall be compelled to be a witness against himself. This safeguard is applicable to the states through the Due Process Clause of the Fourteenth Amendment to the Constitution, see Carter v. Kentucky (1981), 450 U.S. 288, 305,101 S.Ct. 1112, 67 L.Ed.2d 241; Malloy v. Hogan (1964), 378 U.S. 1, 8,84 S.Ct. 1489, 12 L.Ed.2d 653, and, in any event, similar protections are afforded residents of this state under Section 10, Article 1 of the Ohio Constitution. State v. Simmons (Aug. 25, 1992), Pike App. No. 473. A confession which is the product of "coercive police activity" is involuntary and thus violative of both the United States and Ohio Constitutions. See Colorado v. Connelly (1986), 479 U.S. 157, 167,107 S.Ct. 515, 93 L.Ed.2d 473; see, also, State v. Loza (1994),71 Ohio St.3d 61, 66, 641 N.E.2d 1082. Courts determine whether a confession was involuntary by examining the "totality of the circumstances" involved. See State v. Broom (1988), 40 Ohio St.3d 277, 286,533 N.E.2d 682. Factors to be considered when reviewing the totality of the circumstances include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment, and the existence of threat or inducement. See State v. Slagle (1992),65 Ohio St.3d 597, 600, 605 N.E.2d 916; State v. Brewer (1989),48 Ohio St.3d 50, 57, 549 N.E.2d 491. In order for a confession to be deemed admissible, the prosecution must prove by a preponderance of the evidence that the statements were voluntary. Lego v. Twomey (1972),404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618. See, also, State v.Melchior (1978), 56 Ohio St.2d 15, 25, 381 N.E.2d 195.
 {¶ 32} At the outset of his interview with Appellant, David Marcum, an investigator with the Lawrence County Drug Task Force, advised Appellant of his constitutional rights and Appellant executed a written Miranda
waiver. Investigator Marcum then proceeded to interview Appellant. Unbeknownst to Appellant, Investigator Marcum was tape recording the interview. Towards the end of their discussion, Investigator Marcum asked Appellant if he could record his statement and Appellant refused. According to Investigator Marcum, he did not ask Appellant for permission to record the statement before the interview began.
 {¶ 33} Appellant disputes Investigator Marcum's testimony. Appellant testified that Investigator Marcum asked him at the beginning of the interview if Marcum could record their discussion and Appellant denied permission. Appellant argues that his statement was coerced because he did not know he was being recorded and would not have spoken with Investigator Marcum if he had known.
 {¶ 34} The trial court concluded that Appellant voluntarily made his statement to Investigator Marcum. The court determined that Investigator Marcum was not required to inform Appellant that he was being recorded and that Appellant first objected to the recording near the end of the interview. Based on these findings, the trial court denied Appellant's motion to suppress.
 {¶ 35} We have found no case law supporting counsel's argument that Appellant's statement may have been rendered involuntary simply because it was recorded without his knowledge. In fact, in State v. Aguirre, Gallia App. No. 03CA5, 2003-Ohio-4909, at fn. 1, we recommended that law enforcement electronically record confessions so that challenges to the confessions can be more easily resolved. It is clear from the record that Appellant was informed of his Miranda rights and waived them following his arrest. He then voluntarily made a statement to law enforcement officers. There is no evidence, even based on Appellant's own testimony, that Investigator Marcum coerced him in any way. We find no error in the court's denial of Appellant's motion to suppress. Therefore, counsel's third proposed assignment of error is without merit.
 IV. {¶ 36} In his fifth potential assignment of error, counsel argues that the trial court may have erred by not granting Appellant's motion to dismiss on speedy trial grounds. Appellant was indicted on November 18, 2003, and then re-indicated on February 2, 2004. The factual basis for the second indictment was identical to that of the first, but the charges differed somewhat. The State dismissed the first indictment.
 {¶ 37} Appellant moved to dismiss the second indictment, arguing that the speedy trial "three for one" provision of R.C. 2945.71(E) applied to his case and that he should be discharged because he was not tried within ninety days of the first indictment. The State argued that the "three for one" provision was inapplicable because, in addition to being held on bond in this case, Appellant was also being held on a holder filed by the Lawrence County Bureau of Community Control. Consequently, the State had two hundred and seventy days, rather than ninety days, to bring Appellant to trial. The holder was based on Appellant's indictment in this case, not for any other violation of his community control. Counsel argues that the court may have erred in denying the motion to dismiss because the holder would not have been placed but for the new indictment and Appellant was effectively being held solely based on the charges in this case.
 {¶ 38} A person arrested and charged with a felony must be brought to trial within two hundred and seventy days. R.C. 2945.71(C)(2). But, if the accused remains in jail in lieu of bail solely on the pending charges, each day is counted as three days. R.C. 2945.71(E). This is the triple-count provision. Therefore, if the accused is held in jail in lieu of bail solely on the pending charges the State must bring him to trial within ninety days. Generally, when we review speedy trial issues, mixed questions of law and fact exist. State v. Hiatt (1997),120 Ohio App.3d 247, 261, 697 N.E.2d 1025. We will accept the facts as found by the trial court if they are supported by some competent, credible evidence; but we will freely review the application of the law to the facts. Id.
 {¶ 39} An accused presents a prima facie case for discharge based upon a violation of speedy trial limitations by alleging in a motion to dismiss that he or she was held solely on the pending charges and for a period of time exceeding the R.C. 2945.71 limits. State v. Butcher
(1986), 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368. The burden of proof then shifts to the State to show that the R.C. 2945.71 limitations have not expired, either by demonstrating that the time limit was extended by R.C. 2945.72 or by establishing that the accused is not entitled to use the triple-count provision in R.C. 2945.71(E). Butcher,27 Ohio St.3d at 31, 500 N.E.2d 1368. An accused is not entitled to the triple-count provision when he is detained in jail under a valid holder.State v. Brown, 64 Ohio St.3d 476, 479, 1992-Ohio-96, 597 N.E.2d 97;State v. Cremeans (June 26, 2000), Lawrence App. No. 99CA12.
 {¶ 40} Appellant made a prima facie case for discharge when he alleged that he was being held solely on the pending charges and that he had been held in excess of ninety days. The State then had the burden to demonstrate that Appellant was not held solely on the pending charges so the triple-count provision did not apply.
 {¶ 41} To meet its burden, the State introduced the testimony of two witnesses. Jeff Lawless testified that he is the Jail Administrator for the Lawrence County Sheriff's Office. Deputy Lawless testified that he possessed Appellant's file and that it included a probation holder from Community Control Corrections Officer Janet Hieroniumus. Thus, even if Appellant posted bond in this case, he would not be released from the jail.
 {¶ 42} Janet Hieronimus testified that she is a Project Director and Corrections Officer with the Lawrence County Intensive Supervised Probation Department. She placed a holder on Appellant when the initial indictment was filed against him based on his criminal activity.
 {¶ 43} After hearing this testimony, the trial court denied Appellant's motion to dismiss. Although, as discussed previously, trial counsel did not request findings of fact from the trial court, it is apparent that the court determined that Appellant was being held on a valid probation holder in addition to the bond in this case. Therefore, the triple-count provision was inapplicable and the State was required to try Appellant within two hundred and seventy days. Since two hundred and seventy days had not yet passed, the State had not violated Appellant's speedy trial rights.
 {¶ 44} Here, the State introduced testimony that the Lawrence County Probation Department issued a parole holder and that it was received by the jail holding Appellant. Trooper Lawless testified that Appellant was being held on that holder in addition to the pending charges and would not be released even if he posted bail. Although it would have been helpful for the State to introduce a copy of the holder into the record, we conclude that the State carried its burden by introducing the testimony of the two witnesses. See State v. Brown, 64 Ohio St.3d 476,1992-Ohio-96, 597 N.E.2d 97 (transcript of hearing and in-chambers conference sufficient evidence of parole holder even absent findings of fact and copy of the parole holder).
 {¶ 45} We also reject counsel's contention that the triplecount provision may apply because the holder was based solely on the pending charges in this case. In State v. Martin (1978), 56 Ohio St.2d 207,383 N.E.2d 585, the Ohio Supreme Court rejected this argument. The Court noted that a offender who is on probation is subject to specific restraints and conditions. Id. at 587. Although a probation violation may be based on the offender's commission of another crime, this does not mean that the probation violation and the underlying criminal charge are inextricably linked. Id. The probation violation is a separate cause with a different scope of inquiry; moreover, the failure to prosecute the offender on criminal charges would not bar the use of the offense as grounds for revoking the offender's probation. Id., citing Kennedy v.Maxwell (1964), 176 Ohio St. 215, 198 N.E.2d 658. Likewise, an acquittal in the criminal proceeding does not preclude the revocation of probation based on the same charge. Id. (citations omitted). Therefore, the triple-count provision is inapplicable when an offender is being held on a probation holder, even if that holder is based on the underlying criminal charges.
 {¶ 46} We find no merit in counsel's fifth proposed assignment of error.
 V. {¶ 47} In his sixth proposed assignment of error, counsel argues that the trial court may have erred by failing to make the requisite findings when imposing maximum and consecutive sentences on Appellant. In his third assignment of error, Appellant argues makes a similar argument.
 {¶ 48} When an appellate court reviews a trial court's sentencing decision, the reviewing court will not overturn the trial court's sentence unless the court "clearly and convincingly" finds that: (1) the sentence is not supported by the record; (2) the trial court imposed a prison sentence without following the appropriate statutory procedures; or (3) the sentence imposed was contrary to law. See R.C. 2953.08(G)(1);State v. McCain, Pickaway App. No. 01CA22, 2002-Ohio-5342. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. See State v. Eppinger, 91 Ohio St.3d 158,164, 2001-Ohio-247, 743 N.E.2d 881; State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54.
 {¶ 49} R.C. 2929.14(C) limits a trial court's authority to impose the maximum prison sentence. Under R.C. 2929.14(C), maximum sentences are reserved for those offenders who (1) have committed the worst forms of the offense; (2) pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. If the trial court imposes the maximum sentence, it must not only make one of the required findings but also give its reason for doing so orally on the record at the sentencing hearing. R.C. 2929.19(B)(2)(d);State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraphs one and two of the syllabus.
 {¶ 50} The court sentenced Appellant to the maximum sentence for each of his six convictions. After careful review of the sentencing transcript, we conclude that the court erred in sentencing Appellant to the maximum sentence without making any of the necessary findings. Although the court outlined Appellant's extensive criminal history, opined that Appellant lied during his trial testimony, and observed that Appellant expressed no remorse for his actions, the court never found that Appellant committed the worst forms of the offenses or that he posed the greatest likelihood of committing future crimes. Appellant does not meet the statutory definition of a major drug offender or a repeat violent offender so those provisions are inapplicable here. And, as the court never made any of the requisite findings before imposing the maximum sentence, reasons to support them are also nonexistent. Therefore, counsel's sixth proposed assignment of error has merit.
 {¶ 51} Generally, trial courts in Ohio must impose concurrent prison sentences. R.C. 2929.41(A). However, a trial court may impose consecutive prison sentences under R.C. 2929.14(E)(4), which sets forth a tri-partite procedure that the court must follow. First, a trial court must find that consecutive sentences are "necessary" to protect the public or to punish the offender. Second, a court must find that the proposed consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" that the offender poses. Third, a court must find the existence of one of the three enumerated circumstances in sub-parts (a) through (c), which provide: "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or2929.18 of the Revised Code, or was under post-release control for a prior offense. (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct. (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." The court must make its three statutorily enumerated findings, and state the reasons supporting those findings, at the sentencing hearing. Comer, at paragraph one of the syllabus (R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c) interpreted).
 {¶ 52} The court did make the requisite findings and give its reasons for imposing consecutive sentences. The court found that, based on Appellant's extensive record, he is a "career person" and consecutive sentences are necessary to protect the public from "future claims or crimes" and to punish the offender. The court found that, despite numerous incarcerations, Appellant "just hasn't gotten the message." The court also found that consecutive sentences were not disproportionate to the seriousness of Appellant's conduct. The court found that Appellant was involved in a "major, major drug outlet" which posed a danger to the public and that Appellant possessed a gun. Finally, the court found that Appellant was under community control sanctions and probation at the time he committed the multiple offenses and that no single prison term could adequately reflect the seriousness of Appellant's acts. The court noted that Appellant had been released from jail for only a short time when he began distributing drugs.
 {¶ 53} We find merit in counsel's sixth proposed assignment of error to the extent it challenges the trial court's imposition of the maximum sentences without making the requisite statutory findings or stating its reasons for those findings. However, we overrule Appellant's third proposed assignment of error because the court made the requisite findings before imposing consecutive sentences.
 VI. {¶ 54} In his seventh proposed assignment of error, counsel asserts that the cumulative effect of trial court errors may warrant reversal of Appellant's convictions even if no single error constitutes reversible error.
 {¶ 55} Before we consider whether "cumulative error" is present, we must find that the trial court committed multiple errors. State v. Goff
(1998), 82 Ohio St.3d 123, 140, 694 N.E.2d 916. Although we found error in the trial court's sentencing of Appellant, we have found no other errors in the pre-trial or trial proceedings. Therefore, the "cumulative error" principle is inapplicable. Counsel's seventh proposed assignment of error has no merit.
 VII. {¶ 56} In his first proposed assignment of error, Appellant argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Additionally, in his fourth assignment of error, Appellant argues that the evidence in the case shows that he was "actually innocent." We interpret this argument as an additional challenge to the sufficiency and the weight of the evidence.
 {¶ 57} When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 58} Appellant was convicted of one count of trafficking in crack cocaine and one count of trafficking in cocaine in violation of R.C.2925.03(A)(2). He was also convicted of one count of possession of crack cocaine and one count of possession of cocaine in violation of R.C.2925.11(A). As we explained in section I of this opinion, R.C.2925.03(A)(2) prohibits an individual from preparing a controlled substance for distribution when the individual has reasonable cause to believe that the controlled substance is intended for sale by that individual or another person. R.C. 2925.11(A) prohibits an individual from knowingly possessing a controlled substance.
 {¶ 59} The evidence presented at trial demonstrated that the Lawrence County Drug Task Force executed a search warrant on the apartment Appellant shared with his girlfriend Michelle Lewis, aka Deanna Saxton. The officers discovered a pill bottle containing forty-eight tablets and eight pieces of crack cocaine in the closet, a spray can with a false bottom that contained crack cocaine under the kitchen sink, and a potato stick can with a false bottom that contained crack cocaine in the bedroom on top of a dresser built into the headboard of the bed. Captain Chris Bowman testified that the drugs were packaged in small plastic bags, which is typical for re-sale in the community. The officers also found weight control formula powder, a product which is commonly mixed with cocaine to cut the product for resale, and recovered $1,233 in cash from Appellant, including two twenty dollar bills used in a controlled purchase a few days prior to the execution of the search warrant.
 {¶ 60} Following Appellant's arrest, Investigator David Marcum interviewed him. During this interview, Appellant acknowledged that he sold crack cocaine in the community "thousands" of times. He stated that he would purchase cocaine in Columbus, "cut it" with weight control powder to increase the amount of product, and re-sell the drugs. Appellant told Marcum he'd made approximately $10,000 selling drugs since his release from jail approximately a month earlier. Appellant admitted that the drugs found in the apartment belonged to him. Additionally, Deputies Amanda Efaw and Michael Brown, corrections officers for the Lawrence County Sheriff's Department, both testified that Appellant admitted "they had got him good this time" and that he "had got busted with a lot of stuff."
 {¶ 61} Appellant also challenges the sufficiency of the evidence as to the weight of the drugs. The jury found that Appellant trafficked in and possessed ten to less than twentyfive grams of crack cocaine, that Appellant trafficked in ten to less than one hundred grams of cocaine, and that Appellant possessed twenty-five to less than one hundred grams of cocaine.
 {¶ 62} Appellant argues that these findings are not supported by sufficient evidence because the initial weight of the drugs as recorded by the officers varies somewhat from the weight of the drugs as determined by the forensic scientist who tested the drugs. However, the evidence demonstrated that the officers provided only an estimated weight as determined by the scale found in Appellant's apartment and that some of the drugs were used in the testing process. Further, there appeared to be some initial confusion as the quantity of crack cocaine versus the quantity of powder cocaine. The report prepared by the forensic scientist reveals that the police recovered 16.81 grams of crack cocaine and 34.58 grams of cocaine from Appellant's apartment. Therefore, the jury's findings are supported by sufficient evidence.
 {¶ 63} We conclude that the State presented sufficient evidence that Appellant trafficked in crack cocaine and cocaine, and possessed crack cocaine and cocaine, and the amounts of drugs present. Appellant's convictions are supported by sufficient evidence.
 {¶ 64} Appellant was also convicted of possession of criminal tools in violation of R.C. 2923.24. R.C. 2923.24 states: "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally. (B) Each of the following constitutes prima-facie evidence of criminal purpose: * * * (3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use. * * *"
 {¶ 65} Captain Chris Bowman testified that the officers discovered a C-clamp or a vice, which is used to press together powder cocaine and various other ingredients in order to increase the weight of the drug for sale, in a kitchen cabinet during the search of Appellant's apartment. During his interview with Investigator Marcum, Appellant admitted he used the C-clamp to "rock up" the cocaine himself, i.e. to turn cocaine into crack cocaine. There is sufficient evidence to support the jury's guilty verdict on the charge of possession of criminal tools.
 {¶ 66} Appellant was also convicted of having weapons while under a disability in violation of R.C. 2923.13(A)(3), which provides: "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *. * * *" The State introduced evidence that Appellant had three previous convictions of felony possession of crack cocaine. Therefore, he was under a disability as defined in the statute. Investigator Bowman testified that officers found a gun between the mattress and the bedsprings of the bed in the master bedroom. Additionally, they found a box of .32 caliber bullets in a kitchen cabinet. William D. Mark, a firearms examiner, testified that the gun was operable. The State also introduced Appellant's statement to Investigator Marcum in which he admitted that "everything [found in the apartment] was his," and Appellant admitted that he testified at the preliminary hearing that he owned the gun. Therefore, we conclude that the State introduced sufficient evidence that Appellant possessed a weapon while under a disability.
 {¶ 67} Finally, we note that the jury also found that Appellant possessed a firearm while committing a felony in violation of R.C.2929.14(D)(1)(a)(iii), also known as a firearm specification. We find there was sufficient evidence to support this finding.
 {¶ 68} Having concluded that there is sufficient evidence to support Appellant's convictions, we now consider whether the convictions are against the manifest weight of the evidence. Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the factfinder clearly lost its way, we must reverse the convictions and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the State presented sufficient evidence for a reasonable trier of fact to conclude that all the essential elements of the offense were established beyond a reasonable doubt. Statev. Getsy, 84 Ohio St.3d 180, 193-194, 1998-Ohio-533, 702 N.E.2d 866;State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 69} First, Appellant argues that because there was no probable cause to support the search warrant, the fruits of that search should not have been admitted. He contends that he was in jail when most of the events forming the basis for the search warrant occurred, including drug sales by Lewis. Appellant's trial counsel filed a motion to suppress the results of the search warrant, arguing that there was no probable cause to search. The court denied this motion and, after reviewing the record, we find no error in the court's decision. The affidavit supporting the application for the search warrant established that there was evidence of drug activity in the apartment to be searched and that at least one occupant of the apartment had sold drugs. Because the court properly denied the motion, the evidence discovered during the search was admissible.
 {¶ 70} Appellant also argues that he admitted ownership of the drugs and other items found in the apartment solely to protect Lewis from being prosecuted for possession of the items. He testified at trial that the statements he made to Investigator Marcum were not true and that the gun belonged to Lewis. Both he and Lewis testified that they did not know the drugs were in the apartment and that they likely belonged to Cameron Simmons or other individuals who resided in the apartment while Appellant was in jail. Lewis testified that Simmons gave her the gun for protection after the police arrested Appellant for breaking in her door.
 {¶ 71} Appellant admitted that he testified at his preliminary hearing and that he stated then that the gun and ammunition were his and that the statements he made to Investigator Marcum were truthful. Given his last minute denial of these statements, the jury was free to disbelieve Appellant's testimony. Likewise, Lewis was not a credible witness. Therefore, we conclude that Appellant's convictions are not against the manifest weight of the evidence.
 {¶ 72} Appellant's first and fourth proposed assignments of error are overruled.
 VIII. {¶ 73} We recognize that, pursuant to Anders, if we find merit in any of the propositions raised by appellate counsel or by the appellant, we are to appoint new counsel for the appellant and afford new counsel the opportunity to argue on appeal. We found merit in counsel's sixth proposed assignment of error, which asserts that the court erred in imposing the maximum sentences without making the necessary findings and citing its reasons for the findings. Given that Appellant's sentence is clearly contrary to law and that none of the other proposed assignments of error have merit, we find that justice requires an immediate remand to the trial court for re-sentencing. See Sate v. Meyer, Williams App. No. WM-03-008, 2004-Ohio-5229, at ¶ 75; State v. Shannon, Preble App. No. CA20003-02-005, 2004-Ohio-1866, at ¶¶ 4-6. We grant appellate counsel's motion to withdraw as counsel and instruct the trial court to appoint new counsel to represent Appellant at re-sentencing.
 {¶ 74} The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court.
Judgment affirmed in part, reversed in part and cause remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that the Appellant and Appellee split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. McFarland, J.: Concur in Judgment and Opinion.
[1] While we might find the dissent in Hunter to be a more tenable interpretation of the protection afforded by the Double Jeopardy clause, we are not in a position to substitute our judgment for that of either Supreme Court.