OPINION *Page 2 
{¶ 1} Defendant-appellant Michael Simmons appeals from his conviction and the resulting sentence entered in the Jefferson County Common Pleas Court. Appellant presents eleven assignments of error on various topics with multiple issues presented under each. For the following reasons, appellant's conviction is affirmed. However, his sentence is vacated, and the case is remanded for resentencing under State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856.
 STATEMENT OF FACTS {¶ 2} On August 11, 2005, a confidential informant arranged to purchase crack cocaine from appellant, with whom the confidential informant had dealt in the past. The Steubenville police searched the informant, provided her with $300 in marked money, wired her and set up surveillance. Appellant arrived to meet the informant in an alley less than 500 feet from Steubenville High School with a sixteen-year-old juvenile in the passenger seat. According to the informant, she gave appellant the $300 in marked money in exchange for two bags later confirmed to contain 2.46 grams of crack cocaine.
 {¶ 3} Upon hearing the exchange was completed, the police entered the alley with lights and sirens activated. When appellant did not immediately stop, they forced his vehicle to a stop. The marked money was not found in the vehicle or on its occupants. In retracing the path of the chase, the police discovered the $300 in marked money and .96 grams of crack cocaine in a vacant grassy lot.
 {¶ 4} On October 5, 2005, appellant was indicted on four counts. Count one was for corrupting a minor with drugs due to the involvement of the juvenile passenger, a first degree felony. A specification was added since the offense occurred in the vicinity of a school. Count two was for trafficking in crack cocaine in an amount that equals or exceeds one gram but is less than five grams, a third degree felony. Again, a specification was added due to the offense being committed in the vicinity of a school and a juvenile. Count three was for tampering with evidence for disposing of the marked money and the .96 grams of crack cocaine, a third degree felony. Count four was for possession of crack cocaine in an amount that equals or exceeds one gram but is less than five grams, a fourth degree felony. *Page 3 
 {¶ 5} Appellant was arraigned, and the case was set for a January 5, 2006 trial. On December 28, 2005, his attorney filed a motion to withdraw as counsel stating that appellant refused to meet him when he arrived at the jail that morning. A hearing was held on the motion the next day. Appellant opined that he did not meet with counsel enough and had "a feeling" that counsel would not work his hardest. After hearing counsel's arguments and appellant's statements, the court overruled the motion and refused to appoint substitute counsel. When asked if he could retain an attorney, the court advised that he could.
 {¶ 6} On the day of the January 5, 2006 trial, appellant asked his attorney to renew the prior motion and ask that substitute counsel be appointed. The court inquired into appellant's reasons for seeking counsel's withdrawal. The court noted that it previously found no good cause for substitution of counsel. Then, the court found that appellant's new reasons did not constitute good cause and concluded that appellant did not retain an attorney in a timely manner.
 {¶ 7} The case then proceeded to jury trial after which the jury found appellant guilty as charged. On January 12, 2006, a sentencing hearing was held. In a January 13, 2006 entry, the court sentenced appellant to eight years on count one (from a range of three to ten years) and a $10,000 fine, three years on counts two and three (from a range of one to five years), and twelve months on count four (from a range of six to eighteen months). The court held that all sentences would run consecutively for a total of fifteen years in prison.
 {¶ 8} Appellant filed timely notice of appeal. His appointed counsel filed a twelve-page merit brief in June 2006 with three assignments of error. The state timely filed its response. Thereafter, appellant sought leave to file a supplemental brief as he had finally retained counsel. With some reluctance, we granted leave to file a supplemental brief no longer than twenty-three pages for a total of thirty-five pages, the maximum page limit. On October 23, 2006, appellant filed his supplemental brief. The state timely filed its response.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 9} Appellant's first assignment of error alleges: *Page 4 
 {¶ 10} "APPELLANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED AS HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION10, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 11} On December 28, 2005, appellant's appointed counsel filed a motion to withdraw and to appoint substitute counsel as appellant refused to see him that morning when counsel arrived at the jail for a meeting. Counsel had a meeting with appellant the day before to review evidence at the police station and had meetings with him previously. The court held a hearing the day after the motion in order to inquire into appellant's reasons for seeking withdrawal of counsel.
 {¶ 12} Appellant complained that he did not get to speak with his attorney enough times, even though he met with him at least three times in the two weeks since his conveyance from the prison to the local jail. Appellant also stated that his attorney must not have an understanding of the case or the case never would have proceeded this far because he is not guilty. He concluded that he had "a feeling" that counsel would not work to his fullest ability. The court denied the motion to withdraw finding no good cause for appellant's concerns.
 {¶ 13} Then, on the day of trial, appellant asked the court to reconsider its prior denial. Appellant also asked for a continuance because his family allegedly told him that they would retain a lawyer for him. The state objected. When the court inquired of appellant, he stated that he did not think his attorney would work to his fullest ability since he tried to fire him. He claimed counsel told his aunt that he was "a no good drug dealer with a better car than him." And, he claimed that counsel called him "a punk ass kid who doesn't listen to nobody."
 {¶ 14} Appellant expressed that his attorney should not have advised him to plead because appellant thought he had a good case. Appellant said that he only told counsel the name of one witness but there are others he would like to call and evidence he would like to discuss. He stated that he did not go into these matters with counsel because he wanted to fire him, even though the court had already denied his motion. He also complained that he was not brought to court for various court proceedings, like filing for discovery. *Page 5 
 {¶ 15} The court explained to him that no court proceedings have taken place since his arraignment and that the filing for discovery does not take place in open court. The court stated that appellant should have advised counsel of any additional witnesses, especially after his prior motion was denied. The court then denied appellant's motion stating that counsel and the state were prepared to go to trial and opining that defense counsel was experienced and competent. The court gave appellant the chance to represent himself pro se, and he declined.
 {¶ 16} On appeal, appellant contends that the trial court violated his right to effective assistance of counsel because substitute counsel should have been appointed. He claims that there was a complete and utter breakdown of the attorney-client relationship, which was demonstrated by the fact that counsel called appellant names.
 {¶ 17} An indigent defendant has no right to his choice of counsel.State v. Murphy (2001), 91 Ohio St.3d 516, 523. Furthermore, there is no right to a "meaningful attorney-client relationship." Id., citingMorris v. Slappy (1983), 461 U.S. 1, 13-14. An indigent defendant must establish good cause in order to justify appointment of substitute counsel. Id., citing State v. Cowans (1999), 87 Ohio St.3d 68, 72.
 {¶ 18} The trial court has discretion to deny requests found to be unreasonable, and thus, such decision is only reviewed for an abuse of discretion. Id. The court should weigh the defendant's interests in receiving new counsel against the public's interest in the prompt and efficient administration of justice. Id. A "total lack of communication preventing an adequate defense" is a factor to be considered. Id. In order to warrant replacement counsel, the breakdown in the attorney-client relationship must be of such a magnitude as to jeopardize the defendant's right to effective assistance of counsel.State v. Coleman (1988), 37 Ohio St.3d 286, 292.
 {¶ 19} Here, appellant's trial date of January 5, 2006 was set early in October 2005. He did not seek substitution of appointed counsel until December 28, 2005. Additionally, he did not ask for a continuance in order to retain counsel until January 5, 2006, the day of trial. The public's interests in the prompt and efficient administration of justice weigh heavily against him considering these facts. *Page 6 
 {¶ 20} At the first hearing, appellant expressed nothing but "a feeling," which is insufficient to show good cause. See State v.Julious (Dec. 5, 1996), 4th Dist. No. 96CA2409 (subjective beliefs regarding what the defendant perceives are not legitimate reasons for substitution of counsel). The claim of insufficient meetings was found to lack credibility.
 {¶ 21} At the second hearing, appellant claimed his attorney spoke derogatorily about him. Even if true, this would not constitute a total breakdown in communication. Nor does it establish that an adequate defense could not arise from the relationship. In any event, the court was not forced to believe appellant's claims (one of which was alleged to have taken place prior to the first hearing but was never mentioned until the second hearing).
 {¶ 22} Any alleged communication problems or insufficient meetings were admitted to be a result of appellant's own refusal to speak with his attorney because of a desire to fire him. However, the court had already denied his motion, and thus, appellant had no right to act as if substitute counsel would be forthcoming. The perceived problems regarding appellant's failure to disclose all witnesses to his attorney were cured that morning as the state agreed to waive its right to discovery of the witnesses ahead of time and defense counsel had time to interview these witnesses before trial.
 {¶ 23} Counsel met with appellant on various occasions. They discussed the elements of the charges and the evidence. They met to watch the videotapes and listen to the audiotapes. Counsel spoke with appellant's mother and aunt. Counsel reviewed the offered plea bargain with its attendant benefits and risks. Counsel subpoenaed the one witness provided by appellant and prepared a defense involving attacking the informant's credibility. Communication concerning the case occurred and was even attempted to be extended by counsel. Substitution was not required in this case.
 {¶ 24} Nor was a continuance on the morning of trial required to allow appellant to retain counsel. The decision to grant or deny a continuance is also entrusted to the broad discretion of the trial court. State v.Unger (1981), 67 Ohio St.2d 65, 67. The court can consider the length of the delay requested, whether other continuances have *Page 7 
been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court, whether the requested delay is for legitimate reasons or a delaying tactic, whether the defendant contributed to the circumstance which gave rise to the request for a continuance, and other relevant factors depending on the unique facts of the case at hand. Id. at 67-68.
 {¶ 25} The trial court had advised appellant when denying the initial motion that he could retain counsel. However, he did not do so in a timely manner. Instead, he appeared on the morning of trial and claimed that his family had decided to retain a lawyer for him. No retained lawyer made an appearance that day or was named by appellant. As the state pointed out, the prosecution was using witnesses who were in fear of testifying and further continuance would inconvenience the witnesses and the state. The efficient administration of justice called for denial of the last minute motion for a continuance to attempt to hire a private attorney.
 {¶ 26} In conclusion, the trial court heard appellant's claims and heard counsel's presentation of the case. There was no allegation of a particular issue that was not covered in the attorney-client meetings. There was no conflict of interest. Appellant's belief that counsel would not work to his fullest ability was unsupported. The court could determine that there was not a breakdown of communication of such magnitude that would jeopardize appellant's right to effective assistance of counsel. Considering the timing and the statements placed on the record, the court's decision cannot be labeled unreasonable, unconscionable or arbitrary. See State v. Glasure (1999),132 Ohio App.3d 227, 229 (where this court held that only the most extreme circumstances require substitution of appointed counsel). This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 27} Appellant's second assignment of error provides:
 {¶ 28} "THE SENTENCE IMPOSED BY THE TRIAL COURT VIOLATED THE DEFENDANT'S SIXTH AMENDMENT RIGHT TO A TRIAL BY JURY."
 {¶ 29} In Foster, the Ohio Supreme Court found that the findings required to deviate from a minimum sentence represent unconstitutional judicial fact-finding. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 1
of syllabus. Thus, R.C. 2929.14(B) *Page 8 
was excised. Id. Likewise, the Court found the findings required to impose consecutive sentences were unconstitutional. Id. at ¶ 3 of syllabus. Thus, R.C. 2929.14(E)(4) was excised as well. Id.
 {¶ 30} In imposing this excise remedy, the Court found the statutes capable of severance. Id. at ¶ 2, 4 of syllabus. Accordingly, the Court held that the cases before it and those pending on direct review would be remanded for resentencing where the sentencing court would no longer be subject to judicial fact-finding in order to sentence to more than minimum, concurrent sentences. Id. at ¶ 7 of syllabus, 104, 106.
 {¶ 31} In accordance, appellant asks us to vacate his sentence and remand for resentencing pursuant to Foster because he was sentenced to consecutive, non-minimum sentences under a now unconstitutional sentencing scheme. The state responds with a multitude of brief arguments.
 {¶ 32} For instance, the state contends that since the Foster Court merely made it easier to sentence appellant to non-minimum, consecutive sentences, appellant is not aggrieved and his case need not be remanded. Although the rationale seems logical, it flies in the face of what the Supreme Court specifically ordered regarding all cases on direct review and fails to consider that the defendants in Foster would also fit the state's definition of not being aggrieved. See id. at ¶ 104.Foster specifically ordered vacation of these void sentences regardless of the fact that the statute only makes it harder for courts to sentence to non-minimum, maximum or consecutive sentences. See id. at ¶ 105 (explicitly noting that the defendants can be sentenced more harshly on remand). Similarly, the state's argument that appellant's sentence was valid because he was not sentenced "beyond the prescribed statutory maximum" ignores the fact that this very argument was disposed of by theFoster Court. Id. at ¶ 51, 88.
 {¶ 33} Finally, the state alleges that appellant waived the argument presented here because he failed to present it to the trial court. TheFoster court explicitly stated that all cases pending on direct review must be remanded for resentencing, without limiting this statement to only those cases where the defendant raised the issue. Foster at ¶ 104. Thus, this court has declined to apply the waiver doctrine toFoster sentencing issues presented in a direct appeal. State v.Buchanan, 7th Dist. No. *Page 9 
05MA60, 2006-Ohio-5653, ¶ 42-46. As such, appellant has not waived his sentencing argument.
 {¶ 34} This assignment has merit and is sustained. "Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court." Foster at ¶ 104. Likewise, we must follow the dictates of the Ohio Supreme Court. Consequently, appellant's sentence is vacated, and the case is remanded for resentencing under Foster.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 35} Appellant's third assignment of error contends:
 {¶ 36} "THE JURY VERDICT OF GUILTY FOR POSSESSION OF CRACK IN EXCESS OF ONE GRAM WAS BASED UPON INSUFFICIENT EVIDENCE."
 {¶ 37} Whether or not the state presented sufficient evidence is a question of law dealing with adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386. This court must view the evidence in the light most favorable to the state and determine whether any rational trier of fact could find that the elements of the crime have been proven beyond a reasonable doubt. State v. Goff (1998), 82 Ohio St.3d 123, 138.
 {¶ 38} The general elements of drug possession are: knowingly obtaining, possessing or using a controlled substance. R.C. 2925.11(A). Appellant was indicted for fourth degree felony drug possession under R.C. 2925.11(C)(4)(b), which requires the controlled substance to be crack cocaine in an amount that equals or exceeds one gram but is less than five grams.
 {¶ 39} Appellant urges on appeal that there is no evidence that he possessed the requisite amount of crack cocaine. The state responds that there is sufficient evidence that he possessed the 2.46 grams of crack that he sold the informant (plus the .96 grams found in the vacant lot). The state notes that the argument on whether appellant in fact possessed the drugs that the informant allegedly purchased would be a credibility argument, not a sufficiency argument.
 {¶ 40} Construed in the light most favorable to the state, a rational fact-finder could find beyond a reasonable doubt that appellant knowingly possessed the crack cocaine sold to the informant and that this amounted to 2.46 grams. The informant *Page 10 
testified that appellant handed her crack in two baggies which she turned over to police. (Tr. 155-56, 163, 165). The chain of custody and forensic testimony established that those baggies contained 2.46 grams of crack cocaine. (Tr. 211-12, 323-24). This is sufficient evidence of the elements of count four. A reasonable person could also conclude that appellant possessed the additional .96 grams of crack cocaine found abandoned with the marked money and that he thus possessed 3.42 grams total.[1]
 {¶ 41} Credibility, as to whether it was actually the juvenile who handed the informant the crack cocaine, for instance, is primarily a jury question. See State v. DeHass (1967), 10 Ohio St.2d 230, 231;Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Sufficiency of the evidence and weight of the evidence are distinct concepts with different definitions and different tests. Thompkins,87 Ohio St.3d at 386-387. After examining the entire record, weighing the evidence and all reasonable inferences and considering the credibility of witnesses, we cannot say that the trier of fact clearly lost its way in resolving conflicts in the evidence or created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See id. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 42} The remaining assignments of error were submitted by different counsel than the attorney who submitted the first three assignments. Appellant's fourth assignment of error contends:
 {¶ 43} "DEFENDANT-APPELLANTS CONVICTION FOR CORRUPTING ANOTHER (A JUVENILE) WITH DRUGS IS NOT SUPPORTED BY SUFFICIENT EVIDENCE * * * AND/OR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE * * *."
 {¶ 44} Appellant argues that his conviction of corrupting another with drugs was not supported by sufficient evidence and was against the manifest weight of the evidence. As aforementioned, sufficiency and weight are distinct concepts with *Page 11 
different tests applying to each. Thompkins, 78 Ohio St.3d at 386-387. Sufficiency is a question of law dealing with adequacy. Id. at 386. In determining if there was sufficient evidence of the offense, we view the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found the essential elements proven beyond a reasonable doubt. Goff, 82 Ohio St.3d at 138.
 {¶ 45} The essential elements of corrupting another with drugs are: knowingly, by any means, induce or cause a juvenile, who is at least two years younger than the offender, to commit a felony drug abuse offense when the offender knows the age of the juvenile or is reckless in that regard. R.C. 2925.02(A)(4)(c).
 {¶ 46} First, appellant contends that there was insufficient evidence that Markis Hopkins, the person with appellant during the drug deal, was a juvenile. The testimony of both Hopkins and the detective established that Hopkins was born October 4, 1988, he was sixteen years old at the time of the offense, and he turned seventeen two months later. (Tr. 243, 318). The detective then testified that appellant was born May 16, 1985 and was two and a half years older than Hopkins. (Tr. 318). As such, the evidence established that Hopkins was a juvenile who was at least two years younger than appellant.
 {¶ 47} However, appellant contends that a person is not established to be a juvenile even if he is under eighteen unless evidence demonstrates that he is not married. He cites R.C. 2907.01(I), which defines juvenile as an unmarried person under the age of eighteen. He notes that the prosecutor inquired of the detective whether Hopkins was married to which the detective responded, "Not that I'm aware of." (Tr. 352). Appellant believes that such statement is not based upon personal knowledge and thus is insufficient evidence of Hopkins' unmarried status.
 {¶ 48} Initially, we note that appellant fails to acknowledge the other evidence tending to show that Hopkins was not married at the time. For instance, he referred to the mother of his child as his "girlfriend." He also revealed that he lives with his mother, who is his "guardian." Other evidence showed that his sister was once his guardian and that his mother signed his plea agreement.
 {¶ 49} Next, we note that the state fails to respond to appellant's specific argument about Hopkins' marital status. We noticed that the trial court instructed the *Page 12 
jury that a juvenile is an unmarried person under the age of eighteen. (Tr. 467). Considering the state's question on Hopkins' marital status and the court's charge, the state likely shares the mistaken belief that they must prove Hopkins is unmarried.
 {¶ 50} However, the first sentence of R.C. 2907.01, the statute appellant cites, explicitly states that the definitions contained therein are applicable only to R.C. 2907.01 through R.C. 2907.37. This sequence of statutes involves certain offenses sexual in nature. On the contrary, the crime herein is contained in R.C. 2925.02. Thus, the definition statute cited by appellant is inapplicable to this case.
 {¶ 51} As a matter of fact, this offense has its own companion definition statute, where the legislature specifically defined a juvenile merely as a person under the age of eighteen. R.C. 2925.01(N) (to be used for all of chapter 2925). As such, appellant's argument is without merit as there was no requirement of showing that Hopkins was unmarried. The state sufficiently proved the element that Hopkins was a juvenile who was at least two years appellant's junior.
 {¶ 52} Second, appellant argues that there was insufficient evidence that he knew the juvenile's age or was reckless in that regard. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B). A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. R.C. 2901.22(C).
 {¶ 53} The informant testified that appellant had a "kid" with him nicknamed "Squirt," who looked younger. (Tr. 165). Testimony established that Hopkins and appellant have known each other for a couple of years. They played in the same basketball league and were in different age groups. Hopkins knew that appellant was nineteen or twenty at the time of the offense. (Tr. 244). Hopkins stated that appellant likewise knew he was a juvenile. Hopkins testified that appellant was with him when he was arrested for a curfew violation the year before the current offense. (Tr. 277, 377). Hopkins testified that he and appellant are friends, such good friends that he admittedly started out testifying untruthfully in order to protect appellant. (Tr. 261, 270). *Page 13 
 {¶ 54} Furthermore, the jury was able to view tapes showing Hopkins after the arrest. (Tr. 392). See State v. Pottersnak (June 29, 2001), 7th Dist. No. 00JE19 (noting that the jury, who viewed the videotape of the drug transaction capturing the juvenile's appearance, was in the best position to evaluate whether appellant acted recklessly with regard to the juvenile's age). Finally, the jury was able to view Hopkins as he testified a mere five months after the offense. See State v. Aponte
(Aug. 13, 1998), 8th Dist. No. 73121 (stating that the trial judge saw the juvenile when he testified and could determine if it appeared that he could possibly be two years younger than the defendant). In accordance, a rational juror could find beyond a reasonable doubt that appellant had knowledge of Hopkins' age or was reckless in that regard.
 {¶ 55} Third, appellant avers that there was insufficient evidence that Hopkins committed an underlying felony drug abuse offense. The informant testified that it was appellant with whom she set up the deal on the phone, it was appellant who asked her how much money she had, and it was appellant who handled the drugs and money. Hopkins confirmed this testimony. Thus, appellant claims that Hopkins took no part in the trafficking offense, noting that Hopkins' mere presence is not complicity. Regarding Hopkins' offer to assist in the future, appellant argues that any intent must be in the present tense.
 {¶ 56} The state agrees that mere presence is insufficient but urges that such is not the only factor in this case. The state claims that the evidence established that Hopkins was appellant's trainee and concludes that there is sufficient evidence that Hopkins was complicit in the drug trafficking offense here. The state alternatively argues that Hopkins basically offered to sell the informant crack cocaine in the future and that such offer is felony drug trafficking in itself because drug trafficking constitutes selling or offering to sell a controlled substance. See R.C. 2925.03(A)(1).
 {¶ 57} As to the state's alternative argument, appellant counters that a conditional offer to sell in the future is not trafficking as the offer must be a present offer. See State v. Young (Feb. 7, 1991), 2d Dist. No. 12011. Appellant then points out that the trial court instructed the jury that the underlying felony drug abuse offense was that the juvenile was complicit to drug trafficking, not that the juvenile committed a *Page 14 
separate drug trafficking offense with the offer. He also notes that the state did not rely on this theory below.
 {¶ 58} To uphold a conviction for complicity by aiding and abetting, the evidence must show that with shared criminal intent, the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime. State v. Johnson (2001),93 Ohio St.3d 240, 245-246. Although an innocent bystander who is merely along for the ride is not complicit, complicity may be demonstrated by circumstantial as well as direct evidence. See id. Participation incriminal intent can be inferred from circumstances surrounding theoffense including presence, companionship and conduct before and afterthe offense is committed. Id. at 243, 245-246. Actual participation inthe act is not required. Id.
 {¶ 59} Here, Hopkins was the front-seat passenger in appellant's car. The informant called appellant and was instructed to meet in an alley just before the exchange. The informant approached the driver's side window. Appellant asked the informant how much money she had. She responded that she had $300. Appellant then gave her two bags of crack cocaine. Thus, Hopkins was present during an obvious drug deal. However, the facts indicate there was participation and not just passive presence.
 {¶ 60} That is, we also find that the record supports a conclusion that the strong companionship and other relevant, circumstantial evidence contemplated by Johnson can be found in the facts of this case. Hopkins and appellant were friends who had known each of other for a couple years. (Tr. 244, 261). Hopkins had been present at quite a few past drug deals. (Tr. 203). He was known by the nickname of "Squirt." (Tr. 155). Both appellant and Hopkins were talking to the informant during the deal. (Tr. 164). In fact, Hopkins asked her where she had been and noted that he had not seen her in awhile. (Tr. 155, 163).
 {¶ 61} Hopkins also told her that she could call him if she could not get through to appellant. (Tr. 155, 176-177, 191-192). He then gave her his number. Hopkins testified that he did this so he could connect the informant to appellant in the future. (Tr. 251-252). Even if offering to conditionally assist in a future sale is insufficient intent in itself to constitute drug trafficking, such offer can be used to show Hopkins' *Page 15 
participation in the current sale. Moreover, one of the defense's own arguments was that it was the juvenile who handed over the drugs rather than appellant.
 {¶ 62} Construing this evidence in the light most favorable to the state, a rational juror could find that Hopkins committed an underlying felony drug abuse offense of complicity to drug trafficking. Moreover, there is the fact that Hopkins testified that he admitted his guilt when he pled to complicity to drug trafficking in juvenile court regarding this incident. (The propriety of introducing this plea and resulting adjudication will be discussed where it is raised in assignment of error number seven.)
 {¶ 63} Finally, appellant argues that there is insufficient evidence that he caused or induced Hopkins to commit the underlying offense of complicity to drug trafficking. Specifically, he contends there was no evidence he influenced Hopkins or prevailed upon him by persuasion or argument. The state responds by reviewing various cases upholding the evidence concerning inducement.
 {¶ 64} In one case, the defendant and the juvenile were observed interacting together as buyers approached. However, it was the juvenile that actually sold the drugs in that case. The juvenile testified that the drugs were his and that he was not selling for the defendant. Still, the court concluded that there was sufficient evidence of inducement and that the conviction was not against the manifest weight of the evidence.State v. Johnson (Sept. 7, 2000), 8th Dist. No. 76865.
 {¶ 65} In another case, the defendant invited the informant in while holding a crack pipe. When the informant asked to purchase crack cocaine, the defendant asked her fourteen-year-old son if he had any to sell. When he did not, she went next door and returned with her twelve-year-old son, who sold crack cocaine to the informant. The court held that this was sufficient evidence of inducement. State v.Calloway (May 20, 1998), 9th Dist. No. 97CA6709.
 {¶ 66} We add a further case where the defendant flagged down an informant's vehicle and asked what he needed to buy. When the informant noted his drug desires, the defendant signaled to a juvenile twenty feet away and told the juvenile what the informant wanted. The juvenile then sold the informant drugs. Upon addressing the *Page 16 
inducement element, the appellate court concluded that the defendant's conviction was proper. State v. White (June 7, 1995), 9th Dist. No. 94CA5936.
 {¶ 67} In all of those cases, it was the juvenile who sold the drugs. This is not such a wholly distinguishing factor since we are evaluating the element of inducement to be complicit, rather than the level of participation of the juvenile. We also note that consent of the juvenile is not a defense to inducement. See State v. Jones, 5th Dist. No. 05CA59, 2006-Ohio-916, ¶ 38. See, also, State v. Hancock, 2d Dist. No. 19434, 2005-Ohio-127, ¶ 25 (providing drugs to minor is inducement). This is because an induced act need not be forced or coerced.
 {¶ 68} "The word induce is commonly understood to mean to lead on, prevail upon or to move a party by persuasion or influence. Oxford English Dictionary (1961 Edition); Webster's Third New International Dictionary. The word induce connotes the use of persuasion or influence by a party on another to effect a result." Carrothers v. Hunter (1970),23 Ohio St.3d 99, 102.
 {¶ 69} We also point out that the phrase "by any means" is located in the statute immediately before "induce or cause." R.C. 2925.02(A)(4). Thus, the inducement need not be expressly voiced and then reiterated in testimony. Once again, both circumstantial evidence and direct evidence are relevant and independent considerations. State v. Treesh (2001),90 Ohio St.3d 460, 485 (explaining that circumstantial and direct evidence inherently possess the same probative value). The question before us here is essentially whether one can reasonably infer from the evidence presented that appellant caused or induced the juvenile to be complicit in drug trafficking.
 {¶ 70} Hopkins was not yet seventeen. Appellant was two and half years older than Hopkins. They were friends. Hopkins attempted to cover for appellant on the stand before admitting he was lying. Hopkins attended past drug deals with appellant. (Tr. 203). Hopkins offered his phone number to the informant so that she could call him if she could not get in contact with appellant in the future. (Tr. 155, 176-177, 191-192). Hopkins testified that he made this offer so that he could assist the informant in connecting with appellant. (Tr. 251-252). One can reasonably infer appellant, as the informant's main drug dealer, encouraged such request. *Page 17 
 {¶ 71} Moreover, it seems from the cases cited that providing the opportunity to a juvenile to be complicit in drug trafficking is sufficient evidence of inducement. When construing the evidence in the light most favorable to the state, one can reasonably infer that appellant knowingly influenced Hopkins in a manner so as to induce him to be complicit in his drug trafficking. For all of the foregoing reasons, there existed sufficient evidence of corrupting a juvenile with drugs to allow the case to be submitted to the jury.
 {¶ 72} Upon the jury's verdict, weight of the evidence becomes the next issue. We reiterate weight of the evidence concerns the effect of the evidence in inducing belief. Thompkins, 78 Ohio St.3d at 387. In order to reverse a verdict as being against the manifest weight of the evidence, the reviewing court would have to unanimously sit as the "thirteenth juror" and determine that the true jury clearly lost its way and created a manifest miscarriage of justice requiring a new trial. Id.
 {¶ 73} Because credibility of the witnesses and weight of the evidence are questions primarily the province of the fact-finder, a verdict is reversed on manifest weight of the evidence grounds only in exceptional circumstances. See id.; DeHass, 10 Ohio St.2d at 231. The jury is typically said to occupy the best position to observe the demeanor, gestures, and voice inflections of the witnesses. Seasons Coal,10 Ohio St.3d at 80.
 {¶ 74} Here, the jury chose to construe the evidence before it as establishing that appellant knew that Hopkins was a juvenile who was at least two years his junior or was reckless in that regard and as establishing that appellant induced Hopkins' complicity to the drug trafficking offense that occurred herein. Although a rational juror could find that appellant was not reckless regarding the juvenile's age, that the juvenile was not actually complicit or that appellant did not induce the juvenile, such does not make the verdict against the manifest weight of the evidence.
 {¶ 75} When there are two fairly reasonable views of the evidence, we do not choose which one is more believable. State v. Gore (1999),131 Ohio App.3d 197, 201 (7th Dist.). There are no exceptional circumstances here demonstrating a manifest miscarriage of justice regarding the jury's weighing of the evidence and inferences drawn in this case. This assignment of error is overruled. *Page 18 
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 76} Appellant's fifth assignment of error provides:
 {¶ 77} "THE TRIAL COURT'S 'OFF THE RECORD' COMMUNICATION WITH THE JURY CONTRAVENED CRIM.R. 22 AND CRIM.R. 43(A), CONSTITUTED STRUCTURAL ERROR, AND VIOLATED DEFENDANT-APPELLANT'S RIGHT TO A RECORD OF, AND TO BE PRESENT DURING, A CRITICAL STAGE OF THE TRIAL PROCEDINGS, HIS RIGHT TO COUNSEL, AND HIS RIGHT TO DUE PROCESS AND A FUNDAMENTALLY FAIR JURY TRIAL AS GUARANTEED BY THE [CONSTITUTION]."
 {¶ 78} Here, the record establishes that at the end of deliberations, the jury set forth a question. However, the question was not preserved, and the answer was not recorded. Appellate counsel, who is different from trial counsel, claims that this procedure violated the right to have all proceedings recorded. Since the record is silent about the presence of appellant or his attorney for the question answering, he assumes that it was done outside the presence of appellant and his attorney, citing State v. Sales, 10th Dist. No. 02AP-175, 2002-Ohio-6563. Thus, he also claims that the procedure violated appellant's right to be present and to have the presence of counsel at a critical stage.
 {¶ 79} "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Section 10, Article I
of the Ohio Constitution. A criminal defendant thus has a fundamental right to be present at all critical stages of his trial, absent a waiver of rights or other extraordinary circumstances. State v. Williams
(1998), 82 Ohio St.3d 16, 26; State v. Hill (1995), 73 Ohio St.3d 433,444.
 {¶ 80} In implementing this right, Crim.R. 43 provides in pertinent part: "The defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules." Another rule provides that in the case of a serious offense, all proceedings shall be recorded. Crim.R. 22.
 {¶ 81} The state makes much of the fact that there was no objection on the record to the jury question and the answering process employed. Since appellant is *Page 19 
presuming that neither he nor his counsel were present and were not later advised, he states that they could not have objected.
 {¶ 82} It has been established that the defendant has the right to be present when the court communicates with the jury. State v. Abrams
(1974), 39 Ohio St.2d 53, 55-56. However, where the record is silent, the reviewing court does not presume that the defendant and his counsel were absent when the court answered a question. State v. Chinn (1999),85 Ohio St.3d 548, 568 (rejecting the defendant's appellate argument where record did not show if he and/or counsel were present during two jury communications). Instead, the record must affirmatively indicate the absence of a defendant or his counsel during the stage of trial in question. Id., citing State v. Clark (1988), 38 Ohio St.3d 252, 258. Here, there is no affirmative indication either way. Thus, we presume presence.
 {¶ 83} Appellant cites to the Tenth District's Sales case in support of his position. That court found that the record affirmatively indicated absence (as per Chinn) where the court reporter indicated in the transcript the presence the defendant and his counsel at the time the jury was brought back to the courtroom after reaching a verdict but did not similarly make such indication at the time of the jury question. Id. at ¶ 14.
 {¶ 84} This situation is distinguishable from Sales as the court reporter did not indicate appellant and counsel were present at either stage for purposes of comparison of internal indicators in the record. Contrary to appellant's reply, it was not the fact that one could infer that counsel was present at the verdict reading that was relevant inSales. Rather, it was the fact that the court reporter indicated presence at that point. Plus, Sales may not even be in line with theChinn holding, and Sales is in no way binding on this court.
 {¶ 85} We note a prior acknowledgement by the Tenth District: "While it is prudent for the trial court to note the presence of all parties whenever the court is in session, it is not unusual for the court to neglect to do so." State v. Blackwell (1984), 16 Ohio App.3d 100, 101. Additionally, attorneys often consent to submit answers to the jury in the deliberation room where no reporter is present. See, e.g., State v.Pearson (Nov. 13, 1986), 8th Dist. No. 51300. *Page 20 
 {¶ 86} Finally, we point out that where a jury question and answer are not recorded, the defendant can utilize App.R. 9 to supplement the record. See, e.g., State v. Hill, (Feb. 17, 1993), 9th Dist. No. 92CA5332 (holding that such was appellant's required burden). See, also,State v. Abdalla (Sept. 25, 1996), 6th Dist. No. 95-CA-00150 (noting that the supplemental record submitted pursuant to App.R. 9(E) showed that the court met with both prosecution and defense counsel in chambers to discuss the jury's question). Such procedure could not only have clarified what exactly the question entailed, including whether there was any prejudice to appellant, it could also have disclosed who was present and whether consent to answer off the record was given. .See, e.g., Pearson, 8th Dist. No. 51300; State v. Maldonado (Sept. 12, 2001), 9th Dist. No. 01CA007759 (cannot view critical stage claims due to evidence being de hors the record). See, also, State v. Franklin,97 Ohio St.3d 17, 2002-Ohio-5304, ¶ 76 (counsel can agree by telephone for court to answer jury question outside defense's presence).
 {¶ 87} Notably, even answering jury questions outside the defendant's presence is not per se reversible. See Abrams, 39 Ohio St.2d at 56. See, also, Bostic v. Connor (1988), 37 Ohio St.3d 144, 149-150. It has also been stated that "[t]o prevail on a claim of prejudice due to an ex parte communication between judge and jury, the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters." State v. Jenkins (1984),15 Ohio St.3d 164, 236-237. Thus, besides lack of presence and lack of waiver, the content of the question and answer are important to determining prejudice.
 {¶ 88} We also point out that words of guilt had to be filled in and twelve different signatures had to be placed upon four counts some with specifications that needed separate signatures. Such form completion could not have been performed within one minute. However, a mere one minute after notifying the court that they had a question, the jurors returned their verdict. (Tr. 480). As such, it seems the question was simple, procedural and related to what they should do with their completed verdict. For all of the foregoing reasons, appellant has failed to establish reversible error regarding the jury question. *Page 21 
 ASSIGNMENT OF ERROR NUMBER SIX {¶ 89} Appellant's sixth assignment of error alleges:
 {¶ 90} "THE DEFECTIVE JURY INSTRUCTION ON THE COUNT OF CORRUPTING ANOTHER (A JUVENILE) WITH DRUGS CONSTITUTED STRUCTURAL AND/OR PLAIN ERROR AND DEPRIVED DEFENDANT-APPELLANT OF RIGHT TO DUE PROCESS AND RIGHT TO A JURY DETERMINATION ON EACH ELEMENT * * *."
 {¶ 91} First, we address appellant's claim that the court should have defined "cause" in its jury instructions when setting forth the elements of corrupting another with drugs. .Notably, appellant failed to object below. The failure to object to a jury instruction waives all but plain error. State v. Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, ¶ 114.
 {¶ 92} Either way, the Supreme Court has "emphatically remind[ed] trial courts that they should limit definitions, where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges." State v.Williams (1988), 38 Ohio St.3d 346, 356, fn. 14. Appellant does not suggest how the court should have defined such a common term. Additionally, terms of common usage need not be defined for the jury.State v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 26. The use of the word cause here is very common.
 {¶ 93} Moreover, the pertinent statutory provision sets forth "cause" as an alternative to "induce." R.C. 2925.02(A)(4)(c). As the state points out, the court defined induce. (Tr. 464). Specifically, the court stated that induce means to influence or prevail upon by persuasion or argument. Such definition is not contested. Since cause and induce are alternatives, there can be no prejudice by failing to define cause.
 {¶ 94} Next, we address appellant's argument that although the court listed the elements of corrupting another with drugs, named the underlying felony drug offense as complicity to trafficking in drugs and listed the elements of drug trafficking, the court committed error by failing to define complicity for the jury. Appellant urges that the court should have charged the jury that complicity is aiding and abetting and that presence as a knowing spectator is insufficient. Appellant also alleges that the court failed to note that the complicity must be knowing. *Page 22 
 {¶ 95} The state counters with an argument that complicity is also a term of common usage, which need not be defined in a jury instruction. The state alternatively posits that the elements of Hopkins' underlying crime need not be explained as thoroughly as the elements of appellant's principal offense.
 {¶ 96} Apparently, neither party noticed that prior to setting forth any of the elements, the court did explain complicity. First, the court noted that Hopkins is alleged to be an accomplice. Then, the court recited that an accomplice is one who knowingly assists or joins another in the commission of a crime. The court concluded that whether Hopkins was appellant's accomplice is a matter to determine from viewing all of the facts and circumstances to which the jury decides to afford weight. (Tr. 462). Contrary to appellant's contention here, the trial court did define complicity and explain that the complicity must be knowing.
 {¶ 97} Although not detailed, the definition was not erroneous. If anything, the court's definition is more favorable to appellant than use of certain holdings set forth by the Supreme Court. That is, to uphold a conviction for complicity by aiding and abetting, the evidence must show that with shared criminal intent, the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime. State v. Johnson (2001), 93 Ohio St.3d 240,245-246. Although an innocent bystander who is merely along for the ride is not complicit, participation in criminal intent can be inferred from circumstances surrounding the offense including presence, companionship and conduct before and after the offense is committed. Id. at 243, 245-246 (actual participation in the act is not required).
 {¶ 98} Additionally, a jury charge lacking the desired "mere presence" instruction is not deficient. See State v. Gilliam, 7th Dist. No. 03MA176, 2005-Ohio-2791, ¶ 72 (court need not specifically instruct on "mere presence" where such conclusion would be encompassed within the complicity definition provided). See, also, State v. Johnson (2000),140 Ohio App.3d 385, 394 (trial court not required to give proposed instruction that is subsumed within court's general charge). Here, the mere presence rule is consumed within the court's statement that complicity is performed by an accomplice who knowingly assists or joins in the crime. *Page 23 
 {¶ 99} Furthermore, we have a preservation problem here as well. "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30. As the state points out, appellant failed to object to the jury instruction below and thus waived all but plain error. See Jackson, 107 Ohio St.3d 300, at ¶ 114.
 {¶ 100} The appellate court may recognize plain error if substantial rights are affected, even if the error was not brought to the attention of the court. Crim.R. 52(B). However, before an appellate court can recognize plain error, the court must find obvious error affecting such substantial rights that it was outcome determinative. State v.Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62. Plain error is a discretionary doctrine to be used with the utmost of care by the appellate court only in exceptional circumstances to avoid a manifest miscarriage of justice. State v. Hughbanks, 99 Ohio St.3d 365,2003-Ohio-4121, ¶ 39. Such circumstances do not exist here.
 ASSIGNMENT OF ERROR NUMBER SEVEN {¶ 101} Appellant's seventh assignment of error provides:
 {¶ 102} "THE STATE'S USE OF THE ALLEGED JUVENILE ACCOMPLICE'S GUILTY PLEA AND DELINQUENCY ADJUDICATOIN FOR COMPLICITY TO TRAFFICKING IN CRACK COCAINE AS SUBSTANTIVE EVIDENCE OF DEFENDANT-APPELLANT'S GUILT OF CORRUPTING ANOTHER (A JUVENILE) WITH DRUGS AND TRAFFICKING IN COCAINE VIOLATED EVID.R. 609(D), EVID.R. 803(21) AND R.C. 2151.358(H) * * *."
 {¶ 103} Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible. Evid.R. 802. However, if a rule or statute not in conflict with a rule provides for admissibility of a certain piece of evidence, then it is admissible regardless of the general hearsay ban. Id.
 {¶ 104} Appellant believes that it was error to allow examination of the juvenile on his complicity plea, to permit introduction of the court record and to fail to provide a cautionary instruction that the juvenile plea and adjudication are not dispositive of an element of appellant's offense. *Page 24 
 {¶ 105} First, appellant cites Evid.R. 609, which provides for situations when a conviction can be used to impeach a witness. For instance, subject to Evid.R. 403, evidence that a witness has been convicted of a crime is admissible if the crime was punishable by imprisonment in excess of one year pursuant to the law under which the witness was convicted. Evid.R. 609(A)(1). However, Evid.R. 609(D) then provides that evidence of juvenile adjudications is not admissible except as provided by statute.
 {¶ 106} Next, appellant cites R.C. 2151.358(H), which essentially follows Evid.R. 609(D) by stating in pertinent part:
 {¶ 107} "Evidence of a judgment rendered and the disposition of a child under the judgment is not admissible to impeach the credibility of the child in any action or proceeding. Otherwise, the disposition of a child under the judgment rendered or any evidence given in court is admissible as evidence for or against the child in any action or proceeding in any court in accordance with the Rules of Evidence * * *."
 {¶ 108} The state argues for application of the exception in Evid.R. 609(D) admitting evidence of the juvenile adjudication where permitted by statute. That statute, the state posits, is the statute defining the offense of corrupting another with drugs, R.C. 2925.02(A)(4)(c). Thus, if an element of the defendant's crime is causing or inducing a juvenile to commit a felony drug abuse offense, then the juvenile's adjudication for that felony drug abuse offense is admissible. Pursuant to Evid.R. 609(D), the fact of conviction can be proven by testimony of the witness on direct or cross-examination or by showing the witness the public record of the conviction during their testimony.
 {¶ 109} Alternatively, both Evid.R. 609 and R.C. 2151.358(H) deal with use of the juvenile adjudication for impeachment of the juvenile's credibility. The policy behind the above rule and statute is to protect juveniles, not the defendants who corrupt them. See Davis v. Alaska
(1974), 415 U.S. 308, 319 (although purpose of such state laws is to protect juvenile confidentiality, the juvenile conviction may be used by a defendant if needed to protect his confrontation right).
 {¶ 110} Here, the state urges that it did not use the plea to generally impeach the testifying juvenile. Rather, the state used the plea here to rebut the specific testimony by the juvenile initially denying that he was complicit to trafficking in drugs. *Page 25 
The 1980 Staff Note to Evid.R. 601(D) acknowledges this distinction between general impeachment and specific or rebuttal impeachment. The note cites State v. Hale (1969), 21 Ohio App.2d 207 and declares thatHale is not superceded by the rule. Various courts including this one have recognized the distinction and the admissibility of conviction evidence even in violation of Evid.R. 609 where such evidence is for purposes other than general impeachment. See, e.g., State v. Cox (1975),42 Ohio St.2d 200, 203-204; State v. Goodwin (Sept. 24, 2001), 7th Dist. No. 99CA220; State v. White (1982), 6 Ohio App.3d 1, 2.
 {¶ 111} We also dispute appellant's claims that the following hearsay exception was violated:
 {¶ 112} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * *
 {¶ 113} "(21) Judgment of previous conviction. Evidence of a final judgment, entered after a trial or upon a plea of guilty * * * adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused." Evid.R. 803(21), now enumerated as (22).
 {¶ 114} Broken down into pieces, this confusing rule actually means that the physical exhibit of a witness's prior conviction record is hearsay when offered by the state unless it is offered for impeachment of that witness. There is no indication that the impeachment referred to in this rule means only general character impeachment as in Evid.R. 609. Rather, it seems clear by comparison that it includes both general character impeachment and also specific testimonial impeachment, i.e. rebuttal on a certain topic. Thus, the conviction here is subject to a hearsay exception.
 {¶ 115} Here, the witness had already admitted in his live testimony that he pled guilty to complicity to drug trafficking. He then claimed that he did not understand that this was an admission to aiding and abetting the drug deal, and he recanted that he saw drugs or money being exchanged. Thus, the state wished to produce the plea agreement contained in the juvenile court's entry in order to rebut the juvenile witness's attempted recantation. *Page 26 
 {¶ 116} Nevertheless, defense counsel did not object to the testimony of Hopkins or to the introduction of the plea and adjudication. Thus, appellant waived any error in admitting the testimony or the record or in failing to instruct that Hopkins' conviction should be used only for impeachment purposes. (Tr. 255, 404). Plain error is not apparent because outcome-determinative prejudice is lacking. Noling,98 Ohio St.3d 44, at ¶ 62. Regardless, plain error is merely a discretionary doctrine, which we can choose to use if we believe the circumstances are extraordinary. Hughbanks, 99 Ohio St.3d 365, at ¶ 39. Such circumstances do not exist here.
 {¶ 117} In any case, the lack of objection can be viewed as a valid trial tactic utilized by defense counsel who wanted such records in for his own strategical purposes. See State v. Tibbetts (2001),92 Ohio St.3d 146, 166 (generally, deficient performance cannot be found in tactical maneuvers). (This ties into one of appellant's ineffective assistance of counsel arguments under assignment of error number eleven.) The defense strategy was to show that the juvenile was not credible, that the juvenile was the principal rather than an accomplice and to establish that appellant did not influence the juvenile.
 {¶ 118} To do this, the defense revealed to the jury that the juvenile was charged with trafficking but pled guilty to complicity, which they characterized as a reduction in the charge. In making such revelation, the defense introduced the criminal complaint in the juvenile's case and compared such charge to the offense contained in the plea and conviction. (Tr. 281). Additionally, the defense wanted the jury to see this and other documents from the juvenile file stating that the officers advised the prosecutor that the juvenile delivered the bags of crack to the informant in exchange for $300. (Tr. 282). Moreover, defense counsel wished to establish that the juvenile only received probation for his complicity plea, implying that he was testifying against appellant in order to receive a light sentence. (Tr. 284-285). Accordingly, even assuming arguendo an objection could have been entered, the failure to do so is upheld as trial strategy.
 ASSIGNMENT OF ERROR NUMBER EIGHT {¶ 119} Appellant's eighth assignment of error provides: *Page 27 
 {¶ 120} "THE ADMISSION OF 'OTHER ACTS' EVIDENCE AGAINST DEFENDANT-APPELLANT * * * CONSTITUTED PLAIN ERROR * * *."
 {¶ 121} Appellant complains that three excerpts of the informant's testimony revealed inadmissible other acts evidence. In the alternative, appellant claims the probative value of the statements was substantially outweighed by the danger of unfair prejudice. Appellant also alleges that a limiting instruction was required charging that the other acts could only be used for a permissible purpose.
 {¶ 122} First, the informant stated that she traded Percocet stolen from her husband to appellant in return for stolen credit cards (which cards caused her to get arrested and thus become the informant herein). (Tr. 142). She then disclosed that she purchased cocaine from appellant six or seven times in the past. (Tr. 143). The informant also testified that she initially bought from "Santana," but when he was arrested, appellant took over using the same phone. (Tr. 144).
 {¶ 123} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). See, also, R.C. 2945.59 (using scheme, plan or system instead of identity).
 {¶ 124} Thus, the other act is admissible if it tends to show one of the listed exceptions. State v. Crotts, 104 Ohio St.3d 432,2004-Ohio-435, ¶ 19. Here, the informant's statement regarding prior drugs deals tends to show intent to induce the juvenile relevant to the corrupting offense where she also testified that the juvenile was present at prior drug deals. The fact that it was appellant, not the juvenile, who took over for the main dealer would also tend to show hisintent and motive to induce the juvenile to be his accomplice and would most certainly establish his opportunity to do so. See State v.Royster, 8th Dist. Nos. 83741, 83744, 83745, 2005-Ohio-1667, ¶ 23.
 {¶ 125} Additionally, one of appellant's main defense theories was that he was merely present and the juvenile was the dealer. This is a theory contradicting intent. Evidence of prior dealings, taking over a phone for the informant's prior dealer and *Page 28 
trading items for drugs would tend to prove that appellant was more than merely present. See State v. Cruz (Oct. 28, 1993), 8th Dist. No. 64007
 {¶ 126} Moreover, the confidential informant's statements tend to prove identity. That is, the informant could positively identify appellant and distinguish between appellant and Hopkins because she was not just a one-time eyewitness. Rather, she had interacted with him in similar and identical situations numerous times in the near past, establishing a scheme, plan or system. As aforestated, one of the defense's theories was that it was Hopkins who did the deal, not appellant. The confidential informant's ability to differentiate between the two was critical, and thus, the trial court could have used its discretion to rule the evidence admissible as it tends to showidentity. See State v. McNeill (Apr. 1, 1997), 9th Dist. No. 95CA006158;State v. Greene (May 15, 1996), 4th Dist. No. 94CA2297; Cruz, 8th Dist. No. 64007; State v. Velez (Dec. 18, 1992), 3d Dist. No. 4-92-11. See, also, United States v. Evans (C.A.5, 1988), 848 F.2d 1352, 1360. Some courts may even consider portions of the statements to be background information providing context for the current offense. See, e.g.,State v. Freshwater, 11th Dist. No. 2002-L-041, 2004-Ohio-384, ¶ 43-46.
 {¶ 127} Contrary to appellant's assertion, the evidence's probative value is not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Thus, exclusion was not mandatory under Evid.R. 403(A). Lastly, we note that there was no objection to any of the contested testimony below. Thus, even if admission of the testimony on supplying stolen credit cards or taking over Santana's business was error, there would have to be plain error in for us to consider using our discretionary power to recognize plain error. However, such extreme circumstances do not exist here.
 {¶ 128} As for the alleged need for a limiting instruction, we set forth the following statement by the Supreme Court:
 {¶ 129} "The defendant also claims that it was plain error for the trial court to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney. We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to *Page 29 
impose a duty on the trial courts to read this instruction when it is not requested." State v. Schaim (1992), 65 Ohio St.3d 51, fn.9.
 {¶ 130} Here, appellant did not seek a limiting instruction. UnderSchaim, the court's sua sponte failure to give one is not plain error.
 ASSIGNMENT OF ERROR NUMBER NINE {¶ 131} Appellant's ninth assignment of error alleges:
 {¶ 132} "THE FOLLOWING INSTANCES OF IMPROPER CONDUCT BY THE PROSECUTING ATTORNEY, INDIVIDUALLY OR IN THE AGGREGATE, DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO DUE PROCESS AND RIGHT TO A FUNDAMENTALLY FAIR TRIAL * * *."
 {¶ 133} The two-fold test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and whether it prejudicially affected the substantial rights of the defendant. State v. Lott (1990),51 Ohio St.3d 160, 165. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. We must thus consider whether the alleged misconduct was an isolated incident or a pattern of abuse. State v. Smith (1984), 14 Ohio St.3d 13, 15. A reversal for prosecutorial misconduct is not warranted unless it is clear that the outcome of the trial would have been different but for the misconduct. Id. at 15.
 {¶ 134} Appellant sets forth six allegations of prosecutorial misconduct, which he asks us to review individually and then cumulatively. First, he complains that during voir dire, the prosecutor represented as fact that appellant was caught selling crack cocaine. When defense counsel objected to the remark, the prosecutor corrected, "It is alleged." Defense counsel repeated, "Alleged." Finally, the court reiterated, "Alleged would be the proper term." The prosecutor then restated its claim with the preface, "It is alleged * * *." (Tr. 60). Appellant now claims that the court should have instructed the jury to disregard the remark. However, the statements by counsel and the court were sufficient to remedy any issue and erase any error.
 {¶ 135} Second, appellant claims that the prosecutor misstated the standard of proof during voir dire. When asking if the jurors would follow the court's charge regarding the definition of proof beyond a reasonable doubt and not hold the *Page 30 
prosecutor to the standard of a perfect case, the prosecutor mentioned that proof beyond a reasonable doubt means proof that convinces you based on your reason and commonsense that the defendant is guilty. (Tr. 65-66).
 {¶ 136} The state responds by first noting that the court had just stated that it would instruct on the law and thus the prosecutor's statement was not prejudicial. The state also claims that its definition is straight out of Ohio Jury Instructions, citing 4 O.J.I. 403.50.
 {¶ 137} However, the proper definition actually states that thedoubt is based upon reason and commonsense. See R.C. 2109.05(D). It does not state that beyond a reasonable doubt means proof that convinces you based upon reason and commonsense. Nevertheless, there was no objection to the content of the prosecutor's definition. Thus, such claim of prosecutorial misconduct is waived and can only be recognized if it constitutes plain error. See State v. Franklin, 97 Ohio St.3d 1,2002-Ohio 5304, ¶ 24.
 {¶ 138} The trial court's instruction on proof beyond a reasonable doubt correctly stated that the doubt is based upon commonsense and reason. (Tr. 458). See State v. Frazier (1995), 73 Ohio St.3d 323, 330, fn.1 (upholding the trial court's definition of reasonable doubt using the terms commonsense and reason to explain doubt). As such, we cannot say the state's mention of commonsense and reason in a slightly different manner during voir dire constituted prejudice which deprived appellant of a fair trial.
 {¶ 139} Third, appellant alleges that the prosecutor improperly suggested that the jury should consider other acts evidence as proof of criminal propensity. (Tr. 125). Initially, we point to our analysis of the other acts evidence under assignment of error number eight. In any event, appellant failed to object to the contested portions of opening statement and thus waived all but plain error, which is absent in this case. See State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 270.
 {¶ 140} Fourth, appellant complains that the prosecutor goaded defense counsel with the hearsay of police reports by suggesting that he should seek admission if he had nothing to hide. The prosecutor did question the detective about the police report by asking if it was provided to defense counsel at trial and by noting *Page 31 
that the defense did not introduce it as evidence. (Tr. 383). An objection was sustained because the prosecutor seemed to make a statement rather than ask a question.
 {¶ 141} However, the prosecutor's remark does not have the impropriety ascribed to it by appellant. Rather, it must be read in context of the prosecutor's questions to this detective prior to the contested remark and the defense's own questioning of another detective prior to this. That is, a defense theory revolved around the juvenile complaint charging Hopkins with drug trafficking and documents attached to it indicating that Hopkins exchanged the drugs for the money. The defense also urged that Hopkins' charge was "reduced" to complicity in exchange for his testimony even though he was the principal offender. (Tr. 339). In attempting to prove this theory, the defense asked the detective where the police report was from the incident. When the detective stated that he did not have the police report with him, defense counsel denigrated the detective. (Tr. 340). This is why the state introduced the police report, to show that it was not being concealed, and this is what triggered the state to make the remark now contested. This is also why defense counsel did not object on the grounds now raised. There is no indication of an unfair trial here.
 {¶ 142} Fifth, appellant complains that the prosecutor suggested that the defense had a duty to arrange for fingerprinting, DNA testing and voice analysis by asking the detective if the defense had an opportunity to perform these tests and whether the defense took advantage of such opportunity. (Tr. 382-383). On the contrary, noting that the defense could have had tests performed is not misleading and does not impose a burden. Appellant cites no cases on this issue. In fact, it was defense counsel who first inquired of the detective as to why he did not seek fingerprint evidence from the drugs and money found in the grass after the arrest. (Tr. 382). See McKnight, 107 Ohio St.3d 101, at ¶ 290-292. Thus, defense counsel did not object to the state's rebuttal questioning on the opportunity for defense to have certain tests run. Without objection, the issue is waived. And, the door was already open, making any error an invited one.
 {¶ 143} Lastly, appellant complains that the prosecutor urged the jury to consider Hopkins' juvenile plea and adjudication as substantive evidence of *Page 32 
appellant's guilt. (Tr. 438). In reviewing closing arguments for prosecutorial misconduct, we view the remarks in the context of the entire closing argument. State v. Treesh (2001), 90 Ohio St.3d 460, 480. We also review the entire case and determine the effect of any statement on the trial as a whole. State v. Bryan, 101 Ohio St.3d 272,2004-Ohio-971, ¶ 151. Generally, prosecutors are given considerable latitude during closing arguments. State v. Mauer (1984),15 Ohio St.3d 239, 269.
 {¶ 144} Just as there was no objection to the testimony based upon tactical reasons, there was no objection to the prosecutor's statement in closing either. As such, this issue is waived. We cite here to our analysis concerning the testimony on Hopkins' plea under assignment of error number seven where we point out the valid trial tactics of defense counsel. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TEN {¶ 145} Appellant's tenth assignment of error contends:
 {¶ 146} "THE COURT OF COMMON PLEAS COMMITTED PLAIN ERROR AND EXPOSED DEFENDANT-APPELLANT TO MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE IN VIOLATION OF HIS RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSES * * * WHEN IT FAILED TO MERGE THE GUILTY VERDICTS ON THE COUNTS OF CORRUPTING ANOTHER (A JUVENILE) WITH DRUGS, TRAFFICKING IN COCAINE, AND POSSESSION OF CRACK COCAINE PURSUANT TO R.C. 2941.25 AND, INSTEAD, ENTERED SEPARATE CONVICTIONS AND CONSECUTIVE PRISON TERMS THEREON."
 {¶ 147} In assignment of error number three, we discussed whether there was sufficient evidence that appellant possessed one gram of crack cocaine or more. Since a reasonable person could find that he possessed the 2.46 grams prior to handing them to the informant, we found sufficient evidence. We noted that we would later discuss whether the possession conviction should be merged with trafficking as appellant contends here. The state does not respond to this argument.
 {¶ 148} The multiple offense statute provides:
 {¶ 149} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information *Page 33 
may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 150} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25.
 {¶ 151} This is the codification of one of the aspects of the judicial doctrine of merger. (Other aspects being lesser included and inferior degree offenses.)
 {¶ 152} A past Supreme Court case once addressed the effect of this statute upon a situation where the defendant was charged with violations of R.C. 3719.20(A), which prohibits possession for sale of a narcotic drug, and R.C. 3719.20(B), which prohibits the sale of a narcotic drug.State v. Roberts (1980), 62 Ohio St.2d 170. The Court noted that the evidence established that the defendant's possession of heroin for sale was incidental to, and an indivisible part of, the particular sale. Id. at 174. The Court concluded that when both charges are based upon a single sale and involve the same parties and the same type and quantity of drugs, and it is not proven that the defendant possessed a quantity of any type of drugs in excess of the amount sold, the defendant may be indicted for both offenses but may be convicted of only one. Id. In so holding, the Court specified that they must compare the particular facts and elements of the two offenses. Id. at 173.
 {¶ 153} Here, appellant was charged with drug trafficking in violation of R.C. 2925.03(A) and (C)(4)(c), which prohibits selling or offering to sell a controlled substance that equals or exceeds one gram but is less than five grams of crack cocaine. He was also charged with drug possession in violation of R.C. 2925.11(A) and (C)(4)(b), which prohibits knowingly obtaining, possessing or using a controlled substance that equals or exceeds one gram but is less than five grams of crack cocaine. Appellant did not sell all of the drugs he possessed. That is, he possessed 3.42 grams of crack cocaine. He sold only 2.46 grams of his supply. As such, he could be convicted of both trafficking and possession. *Page 34 
 {¶ 154} The next question is whether he can be convicted of the degree of possession for which he was charged. That is, he was charged with possessing an amount equal to or exceeding one gram. Yet, the drugs remaining after the sale only weighed .96 grams. Essentially, we must determine whether one can be convicted of possessing the same drugs that were sold in combination with other supplies to obtain a greater weight specification.
 {¶ 155} Notwithstanding the effect of the 1980 Roberts holding, later Supreme Court decisions have eliminated the portion of Roberts
instructing courts to view the particular and distinct facts of each case when comparing the elements of the two statutes. Before doing so, the Court set forth a two-tiered test for determining whether charges are allied offenses of similar import. First, the court must determine whether the elements of the crimes compared in the abstract "correspond to such a degree that the commission of one crime will result in the commission of the other." State v. Rance (1999), 85 Ohio St.3d 632, 636. "If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Id. However, if the elements do so correspond, the court must move to the second prong of the test, inquiring whether the crimes were committed separately or with separate animus. Id. If the crimes were committed separately or with separate animus, the defendant may be convicted and sentenced to each of the multiple offenses. Id. But, if it is determined that they were not committed separately or with separate animus, then a defendant cannot be convicted of both. Id.
 {¶ 156} The framework of the test was not new. However, theRance Court changed the first prong of the test by declaring that when comparing the elements, the court must do so in the abstract rather than using the particular facts of the case before it. Id. at 639. In setting forth this rule of law, the Supreme Court expressly overruled prior Supreme Court precedent, which allowed consideration of the particular facts in each case to determine if offenses were allied and of similar import. Id. overruling Newark v. Vazirani (1990), 48 Ohio St.3d 81. The Court wished to draw clear legal lines rather than have each case depend upon the unique presenting facts. Id. at 636 (opining that abstract analysis is more functional). *Page 35 
 {¶ 157} This same rule of abstract comparisons is also applicable when considering lesser included and inferior degree offenses. See State v.Barnes (2002), 94 Ohio St.3d 21, 26 ("the evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense"); State v. Deem (1988), 40 Ohio St.3d 205, 209 (inquiring whether the greater offense can ever be committed without committing the lesser offense).
 {¶ 158} Employing this new abstract analysis, many appellate courts have held that trafficking and possession are not allied offenses of similar import. Their analysis generally reasons that, in the abstract, it is possible to obtain, possess or use drugs without selling or offering to sell them and it is possible to sell or offer to sell drugs without obtaining, possessing or using them. State v. Sanders, 11th Dist. No. 2003-P-72, 2004-Ohio-5629; State v. Pena, 10th Dist. No. 03AP-174, 2004-Ohio-350; State v. Johnson (2000), 140 Ohio App.3d 385,390 (1st Dist.). See, also, State v. Hankins (1993), 89 Ohio App.3d 567
(3d Dist.). The latter proposition is usually explained by stating that one can traffic as a middleman or even as a "kingpin" without ever physically possessing the drugs. See, e.g., State v. McGhee, 4th Dist. No. 94CA15, 2005-Ohio-1585; State v. Lyons, 8th Dist. No. 84377, 2005-Ohio-392; State v. Alvarez, 12th Dist. No. CA2003-63-67,2004-Ohio-2403. Such rationale ignores any theories of constructive possession. Still, trafficking is defined as selling or offering to sell drugs, and one can offer to sell drugs but not have the drugs with them at the time.
 {¶ 159} Using this line of cases, trafficking and possession are not allied offenses of similar import. See, also, State v. McIntosh (2001),145 Ohio App.3d 567, 575-576 (1st Dist.) (two possession charges concerning possessing the same marijuana on different days are allied, but possession of and selling same marijuana are not allied offenses). Possession can easily be committed without trafficking. And in the abstract, trafficking can theoretically be committed without possession in some instances. Thus, applying Rance's hypothetical analysis to the statutory elements without reference to any particular facts of the case at bar, appellant's argument here must be overruled.
 {¶ 160} In any event, appellant failed to object at trial or at sentencing. Failure to timely object waives the allied offense argument absent plain error. State v. Foust, *Page 36 105 Ohio St.3d 137, 2004-Ohio-7006, ¶ 139. Considering the abundance of cases against appellant's position, plain error is not apparent. See cases cited above. See, also, State v. Mughli (1987), 33 Ohio St.3d 65,67-68 (trafficking in drugs by offering to sell controlled substance which is later found to be counterfeit and trafficking in counterfeit substance are not allied offenses).
 {¶ 161} This waiver bar applies as well to appellant's second contention under this assignment of error, that trafficking should be merged with corrupting another with drugs. Even if the argument had been preserved, it is also without merit. See, e.g., State v. McGuire (Dec. 18, 1997), 11th Dist. No. 11-192 (corrupting and complicity to trafficking not allied offenses). Contrary to the case cited by appellant, State v. Smith (Sept, 21, 1998), 12th Dist. No. CA97-08-74, which called for remanding for a factual hearing to determine if corrupting and trafficking were allied offenses, Rance has since made clear that we cannot view the distinct facts of each case to make the determination. We thus view the elements in the abstract.
 {¶ 162} One does not always corrupt another when trafficking. That is, one can sell or offer to sell drugs without statutorily corrupting anyone. See R.C. 2925.02 (seller does not corrupt buyer, unless buyer is a juvenile). Equally, one does not always traffic when corrupting. Viewing the relevant elements of corrupting in the abstract, the act of trafficking by the defendant is not required. Specifically, inducing or causing a juvenile to commit a felony drug abuse offense does not require any sale or offer to sell. See R.C. 2925.02(A)(4)(c). As such, this argument is overruled.
 ASSIGNMENT OF ERROR NUMBER ELEVEN {¶ 163} Appellant's eleventh and final assignment of error alleges:
 {¶ 164} "DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL * * *."
 {¶ 165} In seeking reversal for alleged ineffective assistance of trial counsel, the defendant must establish deficient performance which caused prejudice to the defense. Strickland v. Washington (1984),466 U.S. 668, 687; State v. Bradley (1989), 42 Ohio St.3d 136, 142. This statement breaks down into a two-pronged test: deficiency and prejudice. *Page 37 
 {¶ 166} In order to establish that counsel's performance was deficient, the defendant must demonstrate that the performance fell below an objective standard of reasonable representation by the commission of a serious error. State v. Keith (1997), 79 Ohio St.3d 514,534. Counsel is presumed competent. State v. Thompson (1987),33 Ohio St.3d 1, 10. We do not use hindsight to second-guess instances of trial strategy that backfire as there is a wide range of professional competence and of appropriate trial tactics. State v. Carter (1995),72 Ohio St.3d 545, 558.
 {¶ 167} To then demonstrate that he was prejudiced by the deficient performance, the defendant must prove that there exists a reasonable probability that were it not for counsel's errors, the outcome of the proceedings would have been different. Keith, 79 Ohio St.3d at 534. In evaluating prejudice, we thus consider whether our confidence in the outcome is undermined. Bradley, 42 Ohio St.3d at 142.
 {¶ 168} Appellant claims that trial counsel was ineffective in various ways. Most topics raised here have been subsumed in our discussions under other assignments of error. For instance, appellant states that counsel should have objected to the other acts evidence. We refer here to our analysis under assignment of error number eight where we found the other acts evidence admissible.
 {¶ 169} Appellant also complains that counsel failed to request merger of allied offenses of similar import. However, we cite to our analysis under the prior assignment of error where we concluded that the elements of the offenses compared in the abstract did not correlate to such a degree that one offense cannot be performed without committing the other offense.
 {¶ 170} Appellant further claims that counsel should have objected to the testimony concerning the juvenile's plea, the prosecutor's statements regarding it and the other alleged instances of prosecutorial misconduct. We refer here to our analysis under assignments of error numbers seven and nine. Counsel's failure to object to the plea and introduction of other evidence from the juvenile file was a trial tactic essential to certain defense strategies.
 {¶ 171} Next, appellant complains that counsel failed to object to the failure of the court to define cause in the jury instructions and the failure to define complicity. We *Page 38 
point to our analysis under assignment of error number six, concluding that defining cause was unnecessary and moot and that complicity was in fact defined.
 {¶ 172} Finally, appellant complains that counsel failed to raise the unconstitutionality of Ohio felony sentencing statutes and failed to prepare an indigency affidavit for purposes of requesting waiver of fines. These arguments are moot considering our resolution of assignment of error number two where we vacated appellant's sentence and reversed and remanded the case for resentencing in light of Foster.
 {¶ 173} Even if assuming only arguendo there were instances of deficient performance, our confidence in the outcome is not be shaken considering the overwhelming direct and circumstantial evidence on the contested elements. This assignment of error is overruled.
 {¶ 174} For the foregoing reasons, appellant's conviction is affirmed. However, his sentence is vacated, and the case is remanded for resentencing under State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856.
DeGenaro, P.J., concurs.
Waite, J., concurs.
[1] Note that the separate .96 grams discovered is less than the one gram needed to support the degree of appellant's possession conviction. Thus, the state also relied on the substance that was sold to support the possession conviction. Any arguments as to whether one can be convicted of both possession and trafficking of the same drugs is discussed where it is raised within assignment of error number ten. *Page 1