OPINION
{¶ 1} Defendants-appellants, Kelly Carter and Shane Robinson, appeal from Jefferson County Common Pleas Court judgments denying their petitions for post-conviction relief.
 {¶ 2} Appellants were co-defendants in an aggravated murder case where they had a joint jury trial. They were each convicted of aggravated murder, complicity to commit aggravated murder, murder, complicity to commit murder, felonious assault, and complicity to commit felonious assault. On February 10, 2005, the trial court sentenced both appellants to life in prison with parole eligibility after 23 years. Appellants filed notices of direct appeal from their convictions on March 7, 2005. This court later affirmed their convictions. See State v. Carter, 7th Dist. No. 05-JE-7, 2007-Ohio-3502; State v. Robinson, 7th Dist. No. 05-JE-8, 2007-Ohio-3501.
 {¶ 3} Appellants subsequently filed petitions for post-conviction relief on March 27, 2006. The trial court held a hearing on the petitions and ultimately denied both appellants' post-conviction petitions. They subsequently filed appeals with this court from the denial of their post-conviction petitions.
 {¶ 4} We recognized that jurisdictional issues were present in this case due to a question concerning the timeliness of the petitions. Therefore, we ordered the parties to brief the question:
 {¶ 5} "Did the trial court have jurisdiction under R.C. 2953.21(A)(2),2953.23(A)(1), and/or 2953.23(A)(2) to address the substantive issues raised in the petition for post-conviction relief filed on March 27, 2006?"
 {¶ 6} Thus, before addressing the merits of appellants' appeals, we must address this preliminary issue.
 {¶ 7} R.C. 2953.21(A)(2) provides the time period for filing a post-conviction petition:
 {¶ 8} "Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed nolater than one hundred eighty days after the date on which the trialtranscript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in *Page 2 
the supreme court. If no appeal is taken, except as otherwise provided in section 2953.23 of the Revised Code, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal." (Emphasis added.)
 {¶ 9} In both appellants' cases, the clerk of courts filed the transcripts from appellants' direct appeals on September 23, 2005. The clerk then sent both appellants' counsel notices dated September 26, 2005, stating that the transcripts had been filed that day. The notices did not state that in fact, the clerk had filed the transcripts three days earlier. These facts are important because they determine when the clock began to run on appellants' 180 days in which to file petitions for post-conviction relief.
 {¶ 10} In addition to these filings, on January 4, 2006, appellants both supplemented the record with a transcript of an audiotape that was played for the jury and admitted as an exhibit. Once again appellants supplemented the record on January 13, 2006, with a transcript from another proceeding before the trial court.
 {¶ 11} Appellants both filed their petitions for post-conviction relief on Monday, March 27, 2006. This was 185 days after September 23, 2005 and 182 days after September 26, 2005, although the 180th day fell on a Saturday. Neither plaintiff-appellee, the State of Ohio, nor the trial court took issue with the petitions' timeliness.
 {¶ 12} Appellants assert that because other portions of the record were filed on January 4, and on January 13, 2006, there is no question concerning the timeliness of their petitions.
 {¶ 13} We agree that appellants' petitions were timely filed for the following reason.
 {¶ 14} At first glance, one might believe that the proper date for starting the calculation of the 180-day time limit for filing a post-conviction petition was September 23, 2005, the date the trial transcripts were filed in this court. This would make the deadline for filing a post-conviction petition March 22, 2006. Because appellants did not file their motions for post-conviction relief until March 27, they would fall outside of this time limit. *Page 3 
 {¶ 15} But this case is not that simple. On September 26, 2005, the clerk of courts sent both appellants official notices that the transcripts were filed in this court on that date. Appellants and their counsel were entitled to trust in the clerk's official notice to them that the transcripts were filed on September 26. Thus, September 26 was the date that began the running of the 180-day time limit. Consequently, the deadline for filing post-conviction petitions was March 25, 2006, which was a Saturday. Because March 25, was a Saturday, appellants had until the following Monday, March 27, to file their petitions. This was the day that they filed their petitions.
 {¶ 16} Since appellants' petitions were timely filed, we will now address the merits of their appeals.
 {¶ 17} Appellants each raise two assignments of error, which are identical in nature. Appellants' first assignments of error state:
 {¶ 18} "THE TRIAL COURT ERRED BY DENYING THE APPELLANTS CLAIM THAT THE STATE FAILED TO DISCLOSE AN AGREEMENT WITH THE SOLE EYEWITNESS CONCERNING HIS PENDING INDICTMENT IN JEFFERSON COUNTY COMMON PLEAS COURT CASE NO. 02CR175 AND HIS COOPERATION AND TESTIMONY AT TRIAL, MAKING THE APPELLANT'S CONVICTIONS VOID AND/OR VOIDABLE VIOLATING HIS SIXTH, FIFTH
AND FOURTEENTH AMENDMENT RIGHTS GUARANTEED BY THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 19} "THE TRIAL COURT ERRED BY DENYING THE APPELLANT'S CLAIM THAT THE PROSECUTION FAILED TO DISCLOSE TO THE APPELLANT THE AGREEMENT IT REACHED WITH THE STATE'S CRITICAL EYEWITNESS TO NOT PROCEED ON THE PENDING INDICTMENT AGAINST HIM IN JEFFERSON COUNTY COMMON PLEAS COURT CASE NO. 02CR175 IN EXCHANGE FOR HIS COOPERATION AND TESTIMONY AT TRIAL, MAKING THE APPELLANT'S CONVICTIONS VOID AND/OR VOIDABLE BY VIOLATING HISSIXTH, FIFTH AND FOURTEENTH AMENDMENT RIGHTS GUARANTEED BY *Page 4 
THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 20} Appellants argue that the trial court should have granted their post-conviction petitions because the state erred in failing to disclose an alleged agreement with witness, Carl Williams, to drop charges against him in exchange for his testimony against appellants.
 {¶ 21} Williams was the state's key witness in appellants' trial who testified that he saw appellants shoot the victim, Alfred Wade, Jr. It was disclosed that Williams was testifying in exchange for leniency in a federal case in Chicago. On March 23, 2007, well after appellants' trial, the prosecutor filed a request to nolle prosequi a pending state drug case against Williams. Appellants argue that the fact that the prosecutor moved to nolle prosequi the charges against Williams is evidence that an agreement existed between Williams and the state whereby the state would dismiss the charges against Williams in exchange for his testimony against appellants.
 {¶ 22} In support of their contention that the state had a deal with Williams to testify against them in exchange for the state dropping the drug charges against him, appellants point to the following evidence.
 {¶ 23} First, they point to the request to nolle prosequi Williams' drug case. (Def. Ex. E). In the request, the prosecutor specifically states: "The undersigned is advised, further, that in the event this defendant testified favorably in the above described homicide cases, and that he pleaded guilty in Case #02CR1092, then pending in the United State District Court, for the Northern District of Illinois, and was sentenced to a term of imprisonment therein, that the State of Ohio would move for a Nolle Prosequi of the case herein."
 {¶ 24} Second, appellants point to Prosecutor Thomas Straus's testimony. Straus assumed office in January 2005. Because he was not familiar with appellants' case, the court appointed Rich Ferro, the prosecutor who had been handling the matter, as special prosecutor for the case, which proceeded in *Page 5 
February. Thus, Straus was not involved in any deal that may or may not have been made. Appellants' note that Straus testified that the information he put in the request to nolle prosequi Williams' drug case came from "Somebody," possibly Ferro and one of the detectives on the case. (Tr. 101).
 {¶ 25} Third, appellants point to the testimony of Detective Jason Hanlin. Detective Hanlin testified that Williams admitted his role in the drug case against him. (Tr. 146). Appellants argue that this was relevant because Straus indicated that one of the reasons for his request to nolle prosequi Williams' case was because there was no evidence on which to proceed.
 {¶ 26} Fourth, appellants argue that when Williams testified in their trial he had an outstanding warrant for his arrest in the drug case. Yet the warrant was not executed at that time. Appellants contend that this demonstrated that a deal was in place between Williams and the state.
 {¶ 27} Finally, appellants point to a letter from Ferro to the federal judge in Williams' case expressing the state's gratitude to Williams for testifying in appellants' trial.
 {¶ 28} Appellate review of a trial court's disposition of a petition for postconviction relief is a hybrid presenting mixed questions of law and fact. State v. Smith (Sept. 24, 1999), 11th Dist. No. 98-T-0097;State v. Akers (Sept. 9, 1999), 4th Dist. No. 98 CA 33. The trial court's factual findings will not be reversed unless they are against the manifest weight of the evidence. Judgments will not be reversed, as being against the manifest weight of the evidence if they are supported by some competent, credible evidence. Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226, 638 N.E.2d 533; C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Upon accepting such findings of fact, an appellate court then independently determines the propriety of the trial court's conclusions of law.
 {¶ 29} In this case, the trial court found that at appellants' trial, Williams denied the existence of any agreement with the state. It further found that appellants *Page 6 
failed to produce any credible evidence that there was a plea agreement with the state. It found that there was a plea agreement between Williams and the federal government but that this agreement was disclosed in discovery. Finally, the court found that no agreement existed between Williams and the state.
 {¶ 30} The trial court's determination that no agreement existed between Williams and the state is not against the manifest weight of the evidence. In addition to the evidence detailed by appellants above, the following evidence was also presented.
 {¶ 31} Straus testified that when he filed the request to nolle prosequi Williams' drug case, his facts were not completely accurate. (Tr. 95). He stated that he misspoke in his request because he had not fully digested what had occurred in this case. (Tr. 102). Straus testified that once he had reviewed all of the information in this case, it became obvious to him that Williams did not have an agreement with the state. (Tr. 103). He gave the following narrative of events.
 {¶ 32} Williams was one of four defendants in what was known as the "Greyhound bus" drug case. (Tr. 95). Williams, along with co-defendants, Logan, Vance, and Lofton, were all indicted on the same charges. (Tr. 95-96). Lofton and Logan both entered pleas and received probation. (Tr. 96). The prosecutor then dismissed the charges against Vance. (Tr. 96). These three men then left the area and the former prosecutor did nothing to secure their testimony. (Tr. 96-97). Without the testimony of at least one of the co-defendants, the state could not prosecute Williams successfully. (Tr. 97).
 {¶ 33} Straus stated that he was confused about the state of the Williams drug case and how it related to Williams' federal charges. (Tr. 97). After he filed his request to nolle prosequi Williams' drug charges, he spoke with Ferro. (Tr. 97). He then located a note from Ferro to an assistant prosecutor wherein Ferro advised her that Williams' charges were included in a federal charge as part of the federal agreement. (Tr. 97). Straus stated that when he filed the request to nolle prosequi, he was unsure whether Williams actually got a recommendation for dismissal because he had cooperated in appellants' cases or whether Ferro had been satisfied *Page 7 
that the issues raised in Williams' drug case were being adequately handled in the federal case. (Tr. 98).
 {¶ 34} Since that time, Straus stated that he reviewed Williams' federal plea agreement. (Tr. 98). He pointed out that the agreement specifically references Williams' Ohio drug offense. (Tr. 98; Def. Ex. A). Straus stated that he believed that Ferro was satisfied that Williams' drug case should be dismissed because it was addressed in his federal case. (Tr. 98). Straus testified that he believed that Ferro was satisfied that if Williams testified truthfully in appellants' trial and if Williams' state drug case was wrapped up in his federal case, then Ferro would no longer pursue the drug charges against Williams because Williams would be adequately punished. (Tr. 100).
 {¶ 35} Straus further stated that in addition to this reason, his other reason for requesting to nolle prosequi the drug case was that after reviewing it with the Steubenville police, he concluded that the evidence did not exist to successfully prosecute the case. (Tr. 99).
 {¶ 36} Additionally, Detective Jonathan Sowers testified that he had discussed this matter with Straus and conveyed to him that there was no case against Williams to prosecute. (Tr. 126-27, 141). Detective Sowers also testified that in a conversation with Williams, Williams told him that his state drug charges were being handled as part of his federal plea deal. (Tr. 129-30).
 {¶ 37} This evidence supports the trial court's finding that Williams did not have a deal with the state. This matter turned on Straus's credibility. Determinations of witness credibility are primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. This is because the trier of the facts is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of their testimony. State v.Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. *Page 8 
 {¶ 38} Straus's testimony, if believed, demonstrates that no deal existed between Williams and the state. Appellants' strongest argument in support of an alleged deal is the request to nolle prosequi the drug charges against Williams wherein Straus stated that the reason for the motion was that Williams testified favorably in appellants' trial. However, Straus explained himself and this misstatement in his testimony at the post-conviction hearing. He then put his statement on the record that the reason for requesting the nolle prosequi was not because of a deal with Williams in exchange for his testimony, but instead was two part: (1) Williams was already sentenced in federal court, which took into account his drug activity in Ohio; and (2) there was not sufficient evidence on which to prosecute Williams. The trial court believed Straus's explanation.
 {¶ 39} Because the trial's court's findings were not against the weight of the evidence, the court properly denied appellants' post-conviction petitions as to this issue. Accordingly, appellants' first assignments of error are without merit.
 {¶ 40} Appellants' second assignments of error state:
 {¶ 41} "THE TRIAL COURT ERRED BY DENYING THE APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I SECTION 10
OF THE OHIO CONSTITUTION DUE TO TRIAL COUNSEL'S FAILURE TO MAKE A RECORD BY PROFFERING CARL WILLIAMS'S PENDING INDICTMENT AND WARRANT IN JEFFERSON COUNTY COMMON PLEAS COURT, CASE NO. CR 175; WILLIAMS'S PLEA AGREEMENT WITH THE UNITED STATES ATTORNEY IN THE NORTHERN DISTRICT OF ILLINOIS; FAILURE TO MAKE A RECORD AND PRESENT EVIDENCE IN SUPPORT OF APPELLANT'S DEFENSE THAT THE EYEWITNESS WAS NOT PRESENT DURING THE SHOOTING AND FAILED TO PRESENT EVIDENCE TO REFUTE TESTIMONY THAT APPELLANT WAS NOT SEEN IN STEUBENVILLE FOLLOWING THE SHOOTING." *Page 9 
 {¶ 42} "THE TRIAL COURT ERRED BY DENYING THE APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I SECTION 10
OF THE OHIO CONSTITUTION."
 {¶ 43} In their second assignments of error, appellants argue that they were denied effective assistance of counsel. They assert several instances of alleged ineffectiveness. It should be noted that both appellants were represented by the same trial counsel at their joint trial.
 {¶ 44} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 45} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 46} First, appellants contend their counsel was ineffective for failing to proffer for the record several pieces of evidence that they assert would have impeached Williams' credibility. The trial court sustained the prosecutor's objections and limited appellants' attorney on cross-examination of Williams regarding the facts surrounding his federal fraud and conspiracy convictions, his pending state drug charges, and his cooperation in testifying in appellants' case. Appellants argue that their attorney should have proffered Williams' pending state warrant and indictment and his federal plea agreement. Appellants argue that their counsel's failure to *Page 10 
proffer these items denied them from successfully arguing to this court in their direct appeals that the trial court's ruling on these matters was in error.
 {¶ 47} In ruling on this issue, the trial court found, "[e]vidence that * * * [Williams] had made a plea agreement in Federal Court was before the jury and was available for consideration by them. Evidence of the witnesses [sic] numerous aliases, social security numbers and dates of birth were also before the jury." The trial transcript supports the court's findings. Williams testified that he was in prison for fraud, conspiracy, and drugs. (Trial Tr. 932). Additionally, appellants' counsel cross-examined Williams regarding his numerous aliases, social security numbers, and dates of birth. (Trial Tr. 934, 935). And Williams testified that he had to come clean about everything he knew as part of his deal with the "Feds." (Trial Tr. 970).
 {¶ 48} Additionally, appellants' counsel could not have cross-examined Williams regarding his pending state drug charges because Williams had not been convicted of those charges and had not entered into a deal with the state regarding those charges.
 {¶ 49} Appellants also argue that their counsel was ineffective because he failed to make a record and present evidence to refute testimony by Williams that he had a conversation with Robinson after the shooting whereby Robinson offered him a bribe to keep quiet. Appellants contend that Robinson was in jail on a probation violation on the day that Williams testified that he had this conversation with Robinson at the Elks Club. Appellants state that their counsel was aware of this fact yet did not present this evidence to the jury.
 {¶ 50} This issue could have been raised in appellants' direct appeals. "[A] defendant cannot raise an issue in a motion for postconviction relief if he or she could have raised the issue on direct appeal." State v. Reynolds (1997), 79 Ohio St.3d 158, 161,679 N.E.2d 1131.
 {¶ 51} Furthermore, it was brought out at the post-conviction hearing that appellants' trial counsel was aware that Robinson was in jail on the date of the alleged conversation with Williams and elected not to put this information before the *Page 11 
jury. (Tr. 38). According to Robinson, counsel did not want the jury to know that he had been in jail. (Tr. 38). This was a matter of trial strategy. This court does not use hindsight to second-guess instances of trial strategy that backfire as there is a wide range of professional competence and of appropriate trial tactics. State v. Simmons, 7th Dist. No. 06-JE-4, 2007-Ohio-1570, at ¶ 166; State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 965.
 {¶ 52} Additionally, Carter alleges one other instance of alleged ineffectiveness. He contends that his trial counsel had a conflict of interest because of his dual representation of both appellants.
 {¶ 53} Carter raised this issue in his direct appeal as it related to a plea deal offered to him by the state which would have required that he testify against Robinson. State v. Carter, 7th Dist. No. 05-JE-7,2007-Ohio-3502. We set out the pertinent facts as follows:
 {¶ 54} "Prior to trial, the State offered Carter a plea agreement, which was contingent upon Carter's agreement to testify against Robinson. At two hearings, the trial court inquired into whether Carter wanted to discuss the plea offer with separate, court-appointed counsel. Each time, Carter refused. Carter contends that the trial court's efforts were insufficient since it waited to make its inquiry until shortly before trial and failed to ensure that Carter's acceptance of joint representation was voluntary and knowing." Id. at ¶ 56.
 {¶ 55} We then found:
 {¶ 56} "In this case, the prosecution's plea offer created an actual conflict of interest between Carter and Robinson, since a condition of that offer was that Carter testify against Robinson. However, we cannot tell from the record whether counsel's joint representation adversely affected Carter. In particular, it is impossible to say, at this stage in the proceedings, whether separate counsel would have advised Carter to accept the plea offer and/or whether Carter would have taken this advice and actually accepted that offer. Carter is merely asking that this court speculate as to *Page 12 
the effect of separate counsel on this decision. We cannot do so. This is an issue which is the proper subject of post-conviction proceedings." Id. at ¶ 60.
 {¶ 57} Carter still has not presented any evidence of actual prejudice. In support of his argument, Carter points to several facts that came out at the post-conviction hearing. First, he points out that his counsel testified that although he arranged for Carter to meet with another attorney, the other attorney had limited knowledge of the case. (Tr. 86). Additionally, Carter points to his own testimony that his counsel reassured him that he had nothing to worry about if he proceeded with the dual representation. (Tr. 55). Next, Carter points to his counsel's testimony that he never had a discussion with Carter concerning evidence that might otherwise be inadmissible against him if he had a separate trial. (Tr. 87). Finally, Carter points to his testimony that during the trial he became concerned about the dual representation but that he felt he could not do anything about it at that point. (Tr. 56).
 {¶ 58} None of the testimony that Carter points to demonstrates actual prejudice to him. It is still "impossible to say * * * whether separate counsel would have advised Carter to accept the plea offer and/or whether Carter would have taken this advice and actually accepted that offer." Carter, 7th Dist. No. 05-JE-7, at ¶ 60. Carter presented no evidence going to the issue of the plea deal nor did he otherwise demonstrate real prejudice as is required for a claim of ineffective assistance of counsel.
 {¶ 59} Consequently, appellants' second assignments of error are without merit.
 {¶ 60} For the reasons stated above, the trial court's judgments are hereby affirmed.
Waite, J., concurs in judgment only. DeGenaro, J., dissents with dissenting opinion attached. *Page 13